# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MARK HARTMAN,

                 Petitioner,               :       Case No. 3:19-cv-003

     - vs -                                District Judge Walter H. Rice
                                         Magistrate Judge Michael R. Merz

OHIO ADULT PAROLE AUTHORITY,

                                     :

                Respondent.

---

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 27) to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 22) recommending that the Petition be dismissed. Respondent has not replied to the Objections, and its time to do so expired September 17, 2020. Judge Rice has recommitted the case to the undersigned for reconsideration in light of the Objections (ECF No. 28).

When a party files objections to a Magistrate Judge's recommended disposition of a case, the District Judge is required to review *de novo* each portion of the Report and Recommendations to which specific objection is made. Fed.R.Civ.P. 72(b)(3). The analysis in this Supplemental Report is offered with that standard of review in mind.

The Petition contains twelve grounds for relief and Petitioner has objected to the Magistrate Judge's conclusions on each one of them. The Objections will be addressed *seriatim*. Petitioner does not object to the Report's summary of the history of this litigation (ECF No. 22, PageID 2099-2100).

1

**Ground One:  Insufficiency of the Evidence**

Petitioner's First Ground for Relief asserts he was convicted on insufficient evidence in violation of the constitutional standard set in *Jackson v. Virginia*, 443 U.S. 307 (1979). Respondent defended this Ground on the merits and the Report concluded the Ohio Second District Court of Appeals decision on this issue was neither contrary to nor an objectively unreasonable application of *Jackson* (Report, ECF No. 22, PageID 2102-2122, quoting extensively from *State v. Hartman*, 2016-Ohio-2883 (Ohio App. 2d Dist. 2016)("*Hartman I*")).

Hartman's first objection as to Ground One is that "[t]he Magistrate Judge misapprehended the culpable mental state element of rape that is required to be proved under Ohio law and thus erroneously found that the state court convictions are supported by sufficient evidence." (Objections, ECF No. 27, PageID 2197).

The Objections correctly note that while the Fourteenth Amendment supplies the required degree of proof of each element of a crime (beyond a reasonable doubt), it is state law which defines the necessary elements.  *Jackson*; *In re Winship*, 397 U.S. 358 (1970).  Hartman was charged with and convicted of three counts of rape in violation of Ohio Revised Code § 2907.02(A)(2) which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  Ohio also defines statutorily the required *mens rea*, to wit, that the offender acted purposely:  Ohio Revised Code § 2901.22(A) provides:

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender

> intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

Under Ohio law, intent or purpose must be proved by circumstantial evidence.

> The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.

*State v. Johnson*, 56 Ohio St.2d 35, 38 (1978), quoting ¶ 4 of the syllabus[1] in *State v. Huffman*, 131 Ohio St. 27 (1936). Although Ohio *mens rea* requirements were codified in 1974, *Johnson* demonstrates that the Supreme Court of Ohio continues to adhere to *Huffman*. The Report notes that the Second District adhered to this standard in affirming Hartman's conviction (Report, ECF No. 22, PageID 2109, quoting *Hartman I* at ¶ 27, which in turn quotes *State v. Mundy,* 99 Ohio App.3d 275, 288 (2d Dist. 1994)).

The nub of Hartman's objection on Ground One is "[t]he Magistrate Judge then found that the state had proved beyond a reasonable doubt that Hartman had the required culpable mental state." (Objections, ECF No. 27, PageID 2198). No, that is **not** what the Magistrate Judge did on Ground One. Instead, the Report applied the doubly deferential standard applicable to *Jackson* claims after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(Report, ECF No. 22, PageID 2111-13, citing particularly *Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*). The Supreme Court case law, in summary, holds a habeas court may not

---

[1] The syllabus rule, under which the binding law announced in a given case was to be found in the syllabus, was adopted by the Ohio Supreme Court in 1858 and abolished in 2002.

overturn a state court finding that the evidence is sufficient merely because it concludes it would not have found sufficient evidence.  Rather, to grant habeas relief, both the trier of fact and the appellate reviewing court must be found to have acted unreasonably in finding sufficient evidence.

**First Sub-claim:  The state courts failed to consider Weckesser's "Initial Consent, Actions, and Subterfuge"**

Having reviewed the testimony of Molly Weckesser from Hartman's perspective (i.e., that Weckesser consented), the Objections conclude:  "By failing to consider Weckesser's pretextual consent in deciding whether there was sufficient evidence to prove that Hartman had the specific intent to compel her submission against her will, the state courts made an unreasonable decision in light of the evidence." (ECF No. 27, PageID 2202).

But how does Petitioner prove Judge Tucker did not consider the evidence to which Hartman adverts?  Merely by reciting the testimony.  He cites no place in the record where Judge Tucker excluded any of the evidence and his verdict does not say he did not consider Weckesser's admissions (Verdict, State Court Record, ECF No. 5-1, Ex. 4).  The verdict is conclusory, but a general verdict from a jury that had heard Weckesser's admissions would have been no more specific.

Hartman did, of course, move for a new trial, but did not make a sufficiency of the evidence claim in that motion.  Rather, he asserted a manifest weight of the evidence claim.  *Id.* at Ex. 5.  In denying that Motion, Judge Tucker noted that Ohio law would only allow granting a new trial if the evidence were insufficient (Decision, State Court Record, ECF No. 5-1, Ex. 8, PageID 178-80).  Regarding the question of whether Ms. Weckesser consented, Judge Tucker wrote:

4

> The court, as reflected by the verdicts, found Molly Weckesser's testimony regarding the sexual conduct between Ms. Weckesser and Mr. Harman to be credible, and, thus, believable. The court, on the other hand and again as reflected by the verdicts, did not find Mark Hartman's testimony regarding the sexual conduct at issue to be credible. The conclusion, from this, is that the court, consistent with the verdicts, determined Molly Weckesser did not consent to the involved sexual conduct.

*Id.* at PageID 180.  Again, Judge Tucker does not say that he excluded from consideration any of the testimony at trial.  In a footnote he recounts that he did consider Hartman's argument about the inconsistencies in Weckesser's testimony:

> Mark Hartman, under a separate heading within the amended motion for a new trial, argues that Molly Weckesser's trial testimony is "so contradicted by the substantive evidence that it [can] not, standing alone, support a conviction beyond a reasonable doubt." This, obviously, presents a manifest weight argument. It is noted, however, that when making the credibility determination regarding Ms. Weckesser's testimony, the factors discussed in Mr. Hartman's motion were considered.

*Id.* at footnote 2.  On appeal the Second District did not indicate it was declining to consider any of Weckesser's admissions in determining that she did not consent.  *Hartman I*. Hartman has not proved the state courts failed to consider Weckersser's "initial consent."

**Second sub-claim:   The Magistrate Judge Failed "to Consider Weckesser's Alcohol Consumption but Wrongly Considered Hartman's"**

The trial court testimony establishes that both Hartman and Weckesser consumed a great deal of alcohol before engaging in the sexual conduct at issue in this case.  Hartman argues the Magistrate Judge improperly considered Hartman's intoxication[2] in finding his intent and failed to

---

[2] The Magistrate Judge uses the word "intoxication" advisedly as to both Hartman and Weckesser.  Although no forensic evidence of alcohol levels was presented, there was ample testimony about what both consumed over what

consider Weckesser's intoxication in determining whether she consented (Objections, ECF No. 27, PageID 2203-06).

Petitioner relies on Ohio Revised Code § 2901.21(E) which provides in part "Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."  Petitioner continues "[u]sing Hartman's intoxication as evidence of intent was **an** unreasonable determination of fact. The Magistrate Judge erred when he considered Hartman's alcohol use to assess the sufficiency of the evidence on the intent element."  (Objections, ECF No. 27, PageID 2203).

This argument misreads the Report.  Hartman admitted he wanted to have sex with Weckesser.  The question before Judge Tucker was whether Hartman used force or the threat of force to carry out that desire.  The Report found:

> Hartman was substantially bigger than Weckesser from which can reasonably be inferred that he was capable of acting forcibly on her. He did act forcibly on her – pushing her on the bed, pulling her into the shower. He wanted to have sex with her by his own admission. The forcible acts were related to possible sex – he did not show he was strong by ripping up telephone books. Instead the forcible acts found both by the trial and appellate courts involved intentional contact between his body and hers. Given those facts, there is nothing irrational about inferring a purpose to get her to go to bed with him.

(ECF No. 22, PageID 2120-21).  The Report did not rely on Hartman's intoxication to infer intent. Rather the Report noted it was reasonable to infer the amount of alcohol Hartman consumed could

---

period of time to support the conclusion that their blood alcohol levels probably reached the level of clinical intoxication -- 0.15 percent alcohol per liter of blood.  In this they were participating in a cultural phenomenon vividly described by Malcolm Gladwell in his account of the Brock Turner case.  See Talking to Strangers (Little, Brown & Co., Boston, 2019), Chapter Eight.  Tellingly, Gladwell quotes UDSL Dean Lori Shaw as writing "How can we expect students to respect boundaries when no consensus exists as to what they are." *Id.* at p. 193.  As Gladwell summarizes the phenomenon "A young woman and a young man meet at a party, then proceed to tragically misunderstand each other's intentions – *and they're drunk*." P.193; italics in original.

have lowered his inhibitions to the use of force to get sex. *Id.* at PageID 2120. More importantly, however, Judge Tucker did not rely on Hartman's intoxication to infer intent. What matters is what the trial judge did, not how inelegantly the Magistrate Judge may have written in finding Judge Tucker did not act unreasonably.

Hartman next objects that "[t]he Magistrate Judge erred when he ignored Weckesser's intoxication as one of the circumstances to be considered in testing the sufficiency of the evidence." (ECF No. 27, PageID 2205). The argument is that, given Weckesser's level of intoxication, she should have been found, as a matter of law, to have consented to sex with Hartman. As the Objections put it, "Weckesser's 'lowered inhibitions', as noted by the Magistrate Judge in his analysis of Hartman's alcohol consumption, lend credence to Hartman's belief that Weckesser wanted to have sex with him that night." *Id.*

Here is the same difficulty with the Objections as found with treatment of Hartman's intoxication: the Magistrate Judge is not making findings of fact, but is charged to determine if Judge Tucker's findings of fact are unreasonable. That amounts to arguing that, on the testimony he heard, Judge Tucker was bound to find Weckesser's testimony not credible and that she in fact consented. But credibility findings are for the trier of fact, not the habeas court. There is no evidence Judge Tucker disregarded Weckesser's intoxication in finding she did not consent.

While Weckesser's intoxication "lends credence" to Hartman's claim of consent, it does not compel acceptance by the trier of fact.

**Third sub-claim:  The Magistrate Judge misapprehended the "force or threat of force" elements of rape, one of which must be proved under Ohio law, and thus erroneously found the evidence sufficient.**

Hartman next argues the Magistrate Judge misunderstands the force or threat of force elements in Ohio rape law (Objections, ECF No. 27, PageID 2206). In an extended argument, he claims "[t]he Magistrate Judge Erred When He Found that Weckesser's Feelings/State of Mind Were Evidence of Force." *Id.* at PageID 2207, developed at PageID 2207-11. The Magistrate Judge never made such a finding. The Report does conclude, despite Hartman's argument to the contrary, that Weckesser's state of mind was relevant to the question of whether she consented, as Hartman argues, or whether she complied out of fear of the further use of force by Hartman.

In the Report, the Magistrate Judge wrote that "the aggressor in a sexual situation takes his victim as he finds her." Hartman reads this as inappropriately importing into criminal law the "*thin skull*" or "eggshell plaintiff" rule concept from tort law. Instead, Hartman argues:

> Under Ohio criminal law, "A defendant cannot be held responsible for consequences that no reasonable person could expect to follow from his conduct, but he will be held responsible for consequences that are direct, normal, and reasonably inevitable when viewed in the light of ordinary experience." *State v. Dykas*, 185 Ohio App.3d 763, 770, 2010-Ohio-359, 925 N.E.2d 675, ¶24 [Ohio App. 8th Dist.].

*Dykas* is an involuntary manslaughter case where the defendant was held responsible for the death that resulted from punching the victim in the head and knocking him unconscious. Immediately following the language Hartman quotes from *Dykas*, the Eighth District also wrote:

> It is not necessary that the defendant be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct. Only a reasonably unforeseeable intervening cause will absolve one of criminal liability in this context. When the result varied from the harmed intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it

> would be simply unfair to hold the defendant criminally responsible
> for something so unforeseeable.

There is no evidence that Molly Weckesser was particularly vulnerable to being forced into sex. Indeed, it is Petitioner who has raised the tort concept of the eggshell skull. All that the Report intended to convey on this point is that Petitioner's use of the amount of force he did use is not excused by the fact that it was enough force to compel Weckesser, in Judge Tucker's judgment, to give in. To quote *Dykas*, her giving in was "not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable."

Hartman next complains about the Second District's reference to his physique in inferring intent and the Magistrate Judge's acceptance of that reference (Objections, ECF No. 27, PageID 2211-13). "Using any physical characteristic of the accused as evidence of his mental state is an unreasonable determination of fact," he asserts. *Id.* at PageID 2212, relying on *State v. Bates*, 159 Ohio St. 3d 156, 2020-Ohio-634 (2020), and *Buck v. Davis*, 580 U.S. __, 137 S.Ct. 759 (2017). Both of these cases speak to biases against Black people expressed by potential jurors. Neither stands for the general proposition that the physique of a sexual aggressor may not be one of the "totality of the circumstances" a trier of fact looks at in determining intent.


**Ground Two: Unconstitutional Retroactive Application of New Case Authority**


In his Second Ground for Relief, Petitioner claims his "Due Process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution were violated when the state appellate court affirmed his convictions by retroactively applying new constructions of the

elements of rape." (Reply, ECF No. 18, PageID 1981).

The Report concluded both that the Second District did not think it was creating new law and that in fact it had not done so (Report, ECF No. 22, PageID 2122-23).  The Report agreed that a change in the law in a given case can be so extreme that its retroactive application violates the Constitution (Report, ECF No. 22, PageID 2123, citing *Bouie v. City of Columbia*, 378 U.S. 347 (1964)).  As to this case,  the Report concluded the "Second District applied the previously established meaning of the statute: a defendant must by means of force (actual physical force) have compelled the victim to submit sexually, not just to have been afraid in some inchoate fashion." *Id.* at PageID 2125.

Petitioner objects that Judge Tucker eliminated the *mens rea* element by considering Weckesser's fears (Objections, ECF No. 27, PageID 2214-17).  He insists that the sole relevance of the victim's state of mind in a rape case is whether she was compelled (Objections, ECF No. 27, PageID 2218, citing *State v. Schwab*, 109 Ohio St. 532, 541 (1924)).  Then he asserts "Weckesser testified that she was compelled by fears from her own choices and stories from her past. Those facts, straight from the mouth of the State's primary witness – and confirmed by the State at trial – should have resulted in an acquittal." *Id.*  Hartman provides no record reference for this supposedly critical testimony, despite S. D. Ohio Civ. R. 7.2(b)(5) which requires "all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced. . ."

The Magistrate Judge remains persuaded that the Second District did not change Ohio law in its opinion in this case and therefore continues to recommend the Second Ground for Relief be denied on the merits.

**Ground Three: Constitutionally Insufficient Indictment**

In his Third Ground for Relief, Petitioner asserts his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated when he was tried on an indictment that is constitutionally insufficient because it failed to ensure that the trial proceeded on the basis of the Grand Jury's findings, failed to give notice of the charges, and failed and continues to fail to shield him from subsequent prosecution for the same offenses (Reply, ECF No. 18, PageID 1986-2001).

The Report recommends upholding Respondent's procedural default defense of this claim based on Hartman's failure to raise it in the trial court as required by Ohio R. Crim. P. 12(C)(ECF No. 22, PageID 2125-36). Alternatively the Report found the claim was without merit. *Id.* at PageID 2136-39.

Hartman objects that any procedural default is excused because it resulted from ineffective assistance of trial counsel (Objections, ECF No. 27, PageID 2220, deferring argument to Fourth Ground for Relief).

Hartman also asserts any default is excused by his actual innocence. *Id.* at PageID 2221-22. Although acknowledging he has presented no new evidence of actual innocence, he argues that is not necessary in this case, relying on *Sullivan v. Louisiana*, 508 U.S. 275 (1993). In *Sullivan* the Supreme Court found that the jury instruction on reasonable doubt was erroneous and this constituted structural error, requiring a new trial. Thus Sullivan was restored to the status of being presume innocent and given a new trial. Hartman's argument is that because there was insufficient

evidence to convict (Ground One), he also must be presumed innocent and satisfy the actual innocence gateway.

Presumption of innocence and actual innocence are not cognate concepts. Everyone charged with a crime begins with a presumption of innocence which must be overcome by proof beyond a reasonable doubt. This applied to defendants at second trials as well as upon an initial trial. "Actual innocence," on the other hand, applies to a defendant who is presumed guilty because he or she has been convicted in a trial at which the State overcame the presumption of innocence. *Sullivan* contains no discussion of "actual innocence" and in fact was handed down two years before the actual innocence gateway exception to procedural default was recognized in *Schlup v. Delo*, 513 U.S. 298, 319 (1995). *Schlup* unequivocally requires newly-presented evidence of actual innocence. The evidence must be new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324; *Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005). A restored presumption of evidence which would come with the grant of a new trial does not equate with actual innocence for purposes of the *Schlup* gateway.

The Report found the Second District's decision on the adequacy of the indictment was not an unreasonable application of clearly established Supreme Court precedent, citing *Russell v. United States*, 369 U.S. 749 (1962), and *Hamling v. United States*, 418 U.S. 87 (1974)(ECF No. 22, PageID 2136-39). Hartman disagrees, but the Magistrate Judge does not believe the issue requires more analysis beyond what appears in the Report.

**Ground Four: Ineffective Assistance of Trial Counsel: Failure to Move to Dismiss Indictment**

In his Fourth Ground for Relief, Hartman claims he received ineffective assistance of trial counsel when his trial attorney failed to move to dismiss the defective indictment. The Report noted that the Second District had decided this claim on the merits and found that decision was not an unreasonable application of governing Supreme Court precedent, particularly *Strickland v. Washington,* 466 U.S. 668 (1984)(ECF No. 22, PageID 2142).

In connection with the Fourth Ground for Relief, Hartman criticizes the Report for analyzing the Double Jeopardy issue only under state law, particularly in deferring to the Second District's decision that there was only a potential Double Jeopardy problem (Objections, ECF No. 27, PageID 2228).

The federal law on which Hartman relies is *Valentine v. Konteh,* 395 F.3d 626 (6th Cir. 2005). In that case the District Court had granted habeas corpus relief on all forty of petitioner's convictions on indictments with twenty "carbon copy" counts of child rape and twenty like counts of felonious sexual penetration. The counts were not distinguished as to time, location, or otherwise. Convicted on all forty counts, petitioner was sentenced to thirty-five consecutive life terms. Reversing the District Court, the Sixth Circuit allowed two of the counts to stand, but found due process concerns required the remaining thirty-eight counts to be dismissed.

The Supreme Court precedent the *Valentine* Court was applying was *Russell v. United States,* 369 U.S. 749 (1962), which noted the following criteria for the sufficiency of a federal grand jury indictment:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for

13

> a similar offense whether the record shows with accuracy to what
> extent he may plead a former acquittal or conviction.'"

395 F.3d  at 631, quoting 369 U.S. at 763-64.  Because the counts of indictment in *Valentine*

contained no distinctions, it was not possible to tell if his Double Jeopardy rights had already been

violated, i.e., if he had already been convicted twice at trial for the same conduct.

In this case, the indictment does not specify what particular sexual conduct constituted each

offense and Petitioner correctly points out that this resulted in inconsistencies in Judge Tucker's

findings.  But the Second District's decision indicating only potential double jeopardy problems

adequately deals with that difficulty.  The indictment tightly limited the period of time involved in

these offenses. Any new indictment which alleged new acts of sexual misconduct with Ms.

Weckesser on the date and time in question would likely be barred from prosecution by the Double

Jeopardy Clause as enforced by Ohio's allied offenses statute, Ohio Revised Code § 2941.25.

A factor which may have affected the Sixth Circuit's decision in *Valentine* is that Ohio

courts at that time did not allow a pre-trial appeal on a double jeopardy question. *Phillips v. Ct. of

Common Pleas, Hamilton County, Ohio*, 668 F.3d 804(6th Cir.  2012), *citing Wenzel v. Enright*, 68

Ohio St. 3d 63 (1993); *State v. Crago*, 53 Ohio St. 3d 243, 244 (1990).   Ohio courts have now

held that denial of a motion to dismiss an indictment on double jeopardy grounds can be appealed

pretrial. *State v. Anderson*, 138 Ohio St. 3d 264 (2014).  This protects the Double Jeopardy interest

in not being tried a second time for the same offense.

Hartman cites no Supreme Court precedent on the necessary specificity of a state court

indictment other than *Russell*.  Hartman has not shown that the Second District's application of

*Russell* is unreasonable.  *A fortiori* its assessment of trial counsel's performance in not moving to

dismiss the indictment is also a reasonable application of *Strickland*.

14

**Ground Five: Ineffective Assistance of Trial Counsel: Failure to Move for a Bill of Particulars**

In his Fifth Ground for Relief, Hartman asserted he received ineffective assistance of trial counsel when his trial attorney failed to move for a bill of particulars. As with Ground Four, Respondent defends this claim on the merits, asserting the Second District's decision on this claim is entitled to deference under AEDPA (Return of Writ, ECF No. 6, PageID 1164 *et seq.*).

The Report recommended deferring to the Second District's decision of this claim on the merits (Report, ECF No. 22, PageID 2144).  It noted that the only source Hartman cited on the standards for deficient performance on this issue was the ABA Standards for the Defense Function 4-3.6 and 4-4.1, but that neither source mentioned moving for a bill of particulars.  In his Objections, Hartman indicates he miscited the relevant portions of the ABA Standards, but the portions he now quotes extensively do not mention moving for a bill of particulars as a mandatory matter.  Petitioner rejoins that there are no absolutely mandatory pieces of defense counsel conduct in a criminal case, but then cites the Court to *Dobson v. State,* 80 A.3d 959 (Del. 2013), in which the Supreme Court of Delaware found ineffective assistance of trial counsel for trial counsel's failure to file for a bill of particulars "or otherwise becoming informed [of the facts of the case] through discovery." *Dobson* involved an eight-count indictment of child rape over the period of a year without specification of dates until trial.  Thus (1) there was a great deal more ambiguity in the indictment in *Dobson* than here and (2) the court did not suggest that filing for a bill of particulars was a mandatory way of learning the facts of the case.

Other case law cited in support of seeking a bill of particulars does not persuade the

Magistrate Judge that, on the facts of this case, failure to do so was ineffective assistance of trial counsel.

**Ground Six: Ineffective Assistance of Trial counsel: Inept Cross-Examination of the Victim**

In his Sixth Ground for Relief, Hartman alleges he received ineffective assistance of trial counsel in the manner in which trial counsel cross-examined Molly Weckesser in that "counsel introduced evidence on elements of the offense that the state had failed to prove and sought and received inadmissible hearsay that bolstered the State's case all to the prejudice of Hartman."

Respondent defended this Ground on the merits, urging deference to the Second District's decision. The Report agreed with that position and recommended dismissing this claim on the merits (ECF No. 22, PageID 2149).

**Lack of a Trial Strategy**

Petitioner objects first to the Second District's and Magistrate Judge's conclusion that the manner of cross-examination and failure to object to hearsay were the product of a chosen trial strategy (Objections, ECF No. 27, PageID 2244-46). Where the reviewing courts perceived a strategy ("I've got nothing to hide – she consented"), Petitioner now contends there was no strategy or at least there was not sufficient consultation by trial counsel with Petitioner and his parents. To prove those facts, Petitioner relies entirely on his mother's Affidavit:

> "Chris [Conard, the trial attorney] was dismissive of our son. Our son, **who had no prior experience with crime**, was never educated about the system and how it worked. He was not given options, just told what would be done." (ECF No. 27, PageID 2245, quoting ECF No. 5-2, PageID 644, the last page of the eleven-page April 6, 2015, Affidavit of Beth Horvath, Petitioner's mother in support of his Petition for Post-Conviction Relief).

16

"There was no discussion about whether we should meet with the detective, what options Mark [Petitioner] had at that point—we were simply instructed this would occur. Mark was never told that he could refuse to meet with the Detective and naively, John nor I asked what options our son had; **none of us had been through any criminal matter and knew nothing of the process.**" *Id.*

"There was no discussion with Mark or with John or I as to whether or not Mark should meet with the detective after the detective told Chris that significant evidence of rape had occurred. We were just told what to do and when to do it." *Id.*

"Chris never told my son Mark that the statement he made could be used against him if the case proceeded to trial. There was no discussion about Mark's right to withhold the statement." *Id.*

(ECF No. 27, PageID 2245-46).  Ms. Horvath's Affidavit is entirely uncross-examined hearsay.  It shows, at most, that there was not a thorough consultation among all Petitioner's family members about what strategy to adopt[3].

To prove that consultation about strategy must take place to avoid ineffective assistance of trial counsel, Petitioner quotes the opinion of Justice Ginsburg[4] in *Florida v. Nixon,* 543 U.S. 175 (2004):  "An attorney undoubtedly has a duty to consult with the client regarding "important decisions" including questions of overarching defense strategy". *Id.* at 187.  Nonetheless, the Court held that defense counsel's strategy of conceding guilt without his client's consent was not automatically ineffective assistance of trial counsel.

Petitioner cites no testimony from himself or his trial attorney to the effect that there was no trial strategy.  Ms. Horvath's hindsight Affidavit cannot overcome the Second District's finding that there was a strategy.

---

[3] As a non-spouse, of course, Ms. Horvath would not have been "inside" the attorney-client communication privilege.
[4] Justice Ginsburg wrote for a unanimous Court, except for Chief Justice Rehnquist, who did not participate.

**Ineffective Assistance in Cross-Examination of Witnesses Weckesser, Potter, and Norris**

Petitioner next contends trial counsel provided ineffective assistance by the form of the cross-examination questions he asked prosecution witnesses Weckesser, Potter, and Norris (Objections, ECF No. 27, PageID 2247-60).  Respondent defended this claim on the merits, urging deference to the Second District's decision:

> To summarize [the Second District], it was Hartman's trial strategy to undermine Weckesser's claim she was forced to have sex with him. To that end, it was not an unreasonable strategy to attempt to elicit potentially inconsistent statements Weckesser might have made shortly after the incident, to her friend, to the nurse, or to the detective.

(ECF No. 22, PageID 2147).  The Report agreed that this could have been a reasonable trial strategy.

Hartman objects that it can never be acceptable performance to ask leading questions on cross examination where the predicate, if accepted by the witness, will supply new evidence supporting the prosecution's case.  In other words, if the examiner does not know he or she will get a supportive answer, it is deficient performance and prejudicial to ask the question.  For example, Conard asked and Weckesser responded:

> Q: And he was restraining you in some way; is that right?
> A: Yes. He was just on top of me so it was hard for me to move
> Q: But, when he was on top, you managed to get up in an effort to try and get away?
> A: Yes, I tried, but then he kept me there.
> Q: Then he got you back down?
> A Yes.

18

(ECF No. 27, PageID 2249, quoting ECF No. 7-1, Transcript, PageID 1263).  Apparently Weckesser had made no pretrial statements that were inconsistent with her trial testimony and counsel was trying to elicit some statement during trial from Weckesser that would be inconsistent. Unlike a civil discovery context, Conard had no opportunity to try to do this by deposition.

The Second District conceded that Conard's cross-examination had provided evidence of use of force that was not presented on direct.  *Hartman I* at ¶ 48.  It concluded this was not ineffective assistance of trial counsel because:

> "trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters." *State v. Russell,* 2d Dist. Montgomery No.21458, 2007-Ohio-137, P 55. "A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy." *State v. Conley*, 2015-Ohio-2553, P 56, 43 N.E.3d 775 (2d Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128 (1985). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *Id*., citing *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992). Because it was at least arguable that the State had presented sufficient evidence of force relating to at least one of the Rape counts — the last one occurring on the bed — trial counsel could reasonably have concluded that it would not be safe to eschew cross-examination on the element of force.

*Id.*

Petitioner has now persuaded the Magistrate Judge that his recommendation on this claim was in error.  It would of course have been very useful to the defense case if counsel could have shaken Ms. Weckesser's account or created a perception through cross-examination that she was equivocating.  But trial counsel apparently had no lever from prior statements she had made which would enable him to shake her account of the events.  Under those circumstances, the cross-

examination allowed her to reinforce her direct testimony and, as the Second District found, to add to it facts not elicited by the prosecutor, facts supplied in the predicates of counsel's questions.

In ruling on this claim, the Second District invoked the rule of not second-guessing a trial attorney's tactics. But such deference cannot be absolute; choice of a particular tactic must at least be reasonable under the circumstances. The Sixth Circuit has said:

> "A trial lawyer accused of constitutional ineffectiveness for failing to act where action is ordinarily indicated will almost always have a reason for declining to act. The reason will usually be called the lawyer's 'strategy.' But the noun 'strategy' is not an accused lawyer's talisman that necessarily defeats a charge of constitutional ineffectiveness. The strategy, which means a 'plan, method, or series of maneuvers or stratagems for obtaining a specific goal or result,' Random House Dictionary 1298 (Rev. ed. 1975), must be reasonable. It need not be particularly intelligent or even one most lawyers would adopt, but it must be within the range of logical choices an ordinarily competent attorney handling a death penalty case would assess as reasonable to achieve a 'specific goal.'"

*Cone v. Bell*, 243 F.3d 961 (6th Cir. 2001).

The testimony elicited from Weckesser on cross-examination was certainly harmful to Petitioner's case and therefore counsel's deficient performance in asking the questions satisfies the prejudice prong of *Strickland* as well.

The Magistrate Judge also agrees with Petitioner that it was ineffective assistance of trial counsel for trial counsel to elicit from witnesses Potter and Norris hearsay statements of Weckesser that bolstered the State's case regarding the use of force. There is even less arguable tactical justification for eliciting a victim's prior statements consistent with her trial testimony than there is for trying to shake the victim's story by vigorous cross.

Petitioner also objects that:

20

> The Magistrate Judge inserted his own personal knowledge of the trial judge ("He was admitted to practice in 1980 and had an active trial practice before taking the bench" (ECF No. 22, R&R, PAGEID# 2148) and presumed "He [trial judge] would have been well known to defense counsel at the time the decision was made to try the case to the bench." (Id. at PAGEID#2148) However, these judicially found facts are nowhere in the state court record and no evidentiary hearing was held before the Magistrate Judge from which these facts were gleaned.

(ECF No. 27, PageID 2255). This objection is well taken. Although the Magistrate Judge believes these facts are widely known in the Dayton legal community and probably come within the range of facts of which judicial notice may be taken under Fed. R. Evid. 201, no request for judicial notice was made. Moreover, relying on these would violate the rule in *Cullen v. Pinholster*, 563 U.S. 170 (2011). Although the judges of the Second District could also have taken judicial notice of these facts, they were not asked to do so and the facts are not in the state court record. The personal observations are withdrawn.[5]

The Objections contain an extended discussion of the lack of consultation between trial counsel and Petitioner (ECF No. 27, PageID 2256-59). As proof of what happened, Petitioner relies exclusively on the Affidavit of Petitioner's mother.

Based on this analysis, the Magistrate Judge continues to recommend relief not be granted on the sub-claim that counsel had no trial strategy but granted on the sub-claim that he provided ineffective assistance of trial counsel in cross-examining Weckesser, Potter, and Norris.

**Ground Seven: Violation of the Confrontation Clause**

---

[5] Counsel will also appreciate that their personal belief in Petitioner's innocence, expressed several times in their pleadings, does not constitute admissible evidence of actual innocence under *Schlup v. Delo*, 513 U.S. 298, 319 (1995), and cannot be considered by the Court.

In his Seventh Ground for Relief Petitioner alleges his Sixth Amendment Confrontation Clause rights were violated when the trial court admitted the testimony of Mark Squibb in violation of *Crawford v. Washington*, 541 U.S. 36 (2004) (Petition, ECF No. 1, PageID 39).  Respondent asserted   this Ground for Relief was procedurally defaulted by counsel's failure to make a contemporaneous objection.  The Report agreed that admission of the testimony violated the Confrontation Clause, but that Hartman forfeited the claim by not objecting.  The Report also found the Second District enforced the contemporaneous objection rule by reviewing this claim only for plain error.  Hartman responded that Confrontation Clause error is structural, but the Report concluded no Supreme Court precedent had held to that effect.  Ultimately the Report concurred in the Second District's finding that the DNA evidence was essentially immaterial.

The Objections re-assert at length Petitioner's position that Confrontation Clause error is structural (ECF No. 27, PageID 2261-66).  However, they cite no Supreme Court holding to that effect, but rather excerpts from Supreme Court Confrontation Clause cases adverting to the importance of the right.  District courts may grant habeas relief only if the state court decision on the constitutional issue is contrary to or an unreasonable application of clearly established Supreme Court precedent.  *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams v. Taylor,* 529 U.S. 362 (2000); *Bryan v.  Bobby*, 843 F.3d 1099 (6th Cir. 2016), citing *White v. Woodall*, 572 U.S. 415 (2014).

The Report also noted:

> The Sixth Circuit has expressly and recently held that Confrontation Clause violations are subject to harmless-error analysis. *Reiner v. Woods*, [955 F.3d 549 (6th Cir. 2020)][LEXIS citaiton deleted], *Gover v. Perry*, 698 F.3d 295, 302 (6th Cir. 2012), citing *Vasquez v.*

22

*Jones*, 496 F.3d 564, 574 (6th Cir. 2007); *Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009).

(ECF No. 22, PageID 2156).

Hartman continues to insist the error is structural, citing *Jackson v. State,* 891 N.E.2d 657 n.5 (Ind. App. 2008).  Even if that opinion would be, as a matter of logic, more compelling, this Court is bound by the three cited published decisions of the Sixth Circuit to the contrary.

Hartman also argues the error is not harmless.  The Magistrate Judge continues to disagree.  The State did not need DNA evidence to prove Hartman had sexual intercourse with Weckesser – he admitted it.  The DNA evidence from the comforter, because of its distribution, could as easily support Hartman's claim as the State's.  In any event, the DNA evidence was not central to the case, which turned on the respective credibility of Hartman and Weckesser.

In determining harmlessness, the Court applies the standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946). A federal court may grant habeas relief only if a constitutional violation had a substantial and injurious effect or influence in determining the jury's verdict.  *Williams v. Bauman*, 759 F.3d 630, 637 (6th Cir. 2014).  This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error.  *Beck v. Haik,* 377 F.3d 624 (6th Cir. 2004).  *Brecht* applies post-AEDPA "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705." *Fry v. Pliler,* 551 U.S. 112 (2007).

"In other words, a federal habeas court technically applies *Brecht* in light of AEDPA, but because the *Brecht* test is stricter (i.e., tougher on the petitioner) than AEDPA/*Chapman*, any

petitioner that meets the *Brecht* standard will necessarily meet the AEDPA/*Chapman* standard. Thus, when conducting harmless-error review, we simply apply the *Brecht* standard and ask whether [the petitioner] has shown that the error had substantial and injurious effect in determining the jury's verdict." *Wilson v. Mitchell*, 498 F.3d 491(6th Cir. 2007); *Davenport v. MacLaren*, 964 F.3d 448 (6th Cir. 2020).

Applying *Brecht*, the Magistrate Judge finds the Confrontation Clause error did not have a substantial and injurious effect in determining Judge Tucker's verdict.

## Ground Eight: Ineffective Assistance of Trial Counsel: Failure to Raise Confrontation Clause Objection

In his Eighth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his trial attorney did not make a Confrontation Clause objection to the Squibb testimony. The Report concluded that, because admission of the DNA evidence was harmless, Hartman was not prejudiced by Conard's failure to object (ECF No. 22, PageID 2159).

Petitioner objects, but essentially repeats his argument from the Seventh Ground for Relief. No further analysis is necessary.

## Ground Nine: Ineffective Assistance of Counsel: Failure to Obtain Hartman's Recorded Statement

In his Ninth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his trial attorney failed to obtain Petitioner's tape recorded statements prior to trial or, if they did not exist, to withdraw and become a witness as to the content of those statements.

24

Respondent asserted this claim was procedurally defaulted by Hartman's failure to raise it on direct appeal to the Supreme Court of Ohio and the Report agreed this claim should be dismissed on that basis (ECF No. 22, PageID 2163).

Petitioner objects that he "could not have fully raised the issue on direct appeal because evidence that *dehors* the record was necessary. The *res judicata* finding is an unreasonable finding of fact in light of the evidence presented, and the adoption of that unreasonable finding, by the Magistrate Judge, is objected to." (Objections, ECF No. 27, PageID 2280).

Hartman raised this ineffective assistance of trial counsel claim on direct appeal and the Second District decided it against him on the grounds he had not proved prejudice. *Hartman I*, ¶ 57. The Report found this was not among the claim pursued on direct appeal to the Supreme Court of Ohio (ECF No. 22, PageID 2160). Hartman makes no objection to that finding but claims instead that because the claim was based on evidence *dehors* the record, it could not properly have been brought on direct appeal, even though it was.

Hartman raised the claim again in his Petition for Post-conviction Relief as Ground Four (Post-Conviction Petition, State Court Record, ECF No. 5, PageID 527.) Judge Tucker dismissed this Ground for Relief because (1) Hartman had not submitted evidence in support of it and (2) Hartman's alleged admission of digital penetration which allegedly would have been supported by the taped interview was not material to the verdict (Decision, Entry and Order, State Court Record, ECF No. 5, Ex. 25, PageID 807-809.)

On appeal the Second District found it was undisputed that a recording of this interview did not exist at the time of trial and it cannot be ineffective assistance of trial counsel to fail to obtain what does not exist. *State v. Hartman*, 2017-Ohio-7933 ¶ 45 (Ohio App. 2nd Dist. Sep. 29,

2017). Secondly the claim was barred by *res judicata* because the principal evidence Hartman relied on for this Ground for Relief in his post-conviction petition was evidence submitted with the motion for new trial. *Id.*

As the Report noted, Hartman relied on Ohio case law to rebut the Second District's *res judicata* conclusion (ECF No. 22, PageID 2161). The Report noted that federal habeas courts are bound by state court interpretations of state law. *Id.* citing principally *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).

The Objections offer no rebuttal on the *Bradshaw v. Richey* point. Instead of again arguing that the Second District was wrong on Ohio law, Petitioner now argues that the Second District made an unreasonable determination of fact.

The function of objections under Fed.R.Civ.P. 72(b)(3) is to allow a District Judge to review *de novo* those portions of a Magistrate Judge's Report to which substantial objection is made, not to allow a litigant to introduce new arguments not made before the Report was filed. The Sixth Circuit has held:

> [W]hile the Magistrate Judge Act, 28 U.S.C. § 631 et seq., permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. See *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); see also *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988*); Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.,* 747 F. Supp. 1299, 1302-03 (S.D. Ill. 1990).

*Murr v. United States,* 200 F.3d 895, 902 (6th Cir. 2000).

Even assuming this argument is not defaulted by Petitioner's failure to present it earlier, it is without merit. First of all, determination of *res judicata* is a mixed question of law and fact. That is, an Ohio court must decide what facts were necessary to prove the ineffective assistance of trial counsel claim and whether those facts were available on the direct appeal record.

Secondly, the fact that some additional evidence which could be used to prove the claim was presented for the first time in post-conviction does not prove that there was insufficient evidence already in the record to decide the claim on direct appeal. In other words, there is almost always some additional evidence available to prove almost anything, including a claim of ineffective assistance of trial counsel. If *res judicata* could be defeated by pointing to any such evidence, the doctrine would be completely undermined. But it is not a throwaway doctrine. The Sixth Circuit has repeatedly held that Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Hartman was represented on direct appeal by the same counsel who now represent him in habeas. They apparently thought the issue could properly be presented on direct appeal because they did so (Appellant's Brief, State Court Record, ECF No. 5-1, Ex. 12). They also represented Hartman on direct appeal to the Supreme Court of Ohio, but they did not include this issue (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 5-1, Ex. 17).

The Magistrate Judge remains persuaded this Ninth Ground for Relief should be dismissed

as procedurally defaulted.

**Ground Ten: Ineffective Assistance of Trial Counsel: Comforter Stains**

In his Tenth Ground for Relief Petitioner asserts he received ineffective assistance of trial counsel when his trial counsel did not adequately deal with stains on the comforter from the sexual encounter bed. Respondent defends this claim on the same basis as Ground Nine (Return, ECF No. 6, PageID 1170). The Report also found procedural default and recommended dismissal on that basis (ECF No. 22, PageID 2166). Having reconsidered that recommendation in light of the Objections, the Magistrate Judge does not believe further analysis on this Ground for Relief is warranted.

**Ground Eleven: Ineffective Assistance of Trial Counsel: Waiver of Privilege and Work Product**

In his Eleventh Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his trial attorney delivered his statement to the lead detective on the case, given that the statement was "concocted" and its delivery effected a waiver of attorney-client communication privilege and attorney work product protection.

Respondent asserted this claim was procedurally defaulted by Hartman's failure to include it on direct appeal to the Supreme Court of Ohio, although he had raised it in the Second District. When Hartman raised this claim as his Third Ground for Relief in post-conviction, Judge Tucker determined that the first part of the claim – not assuring Hartman's statement aligned with the

physical evidence – was barred by *res judicata*. He found the balance of the claim to be without merit. Both the Second District and the Report deferred to that conclusion.

The Magistrate Judge does not believe Ground Eleven requires additional analysis beyond that contained in the Report, except that to the extent the Report contains personal observations of the Magistrate Judge which are not judicially found facts, they are withdrawn. The Magistrate Judge believes them to be accurate, but they do not properly form the basis of a decision in this case.

**Ground Twelve: Ineffective Assistance of Trial Counsel: Waiver of Jury Trial**

In Twelfth and last Ground for Relief, Hartman claims he received ineffective assistance of trial counsel when counsel advised him to waive a jury trial (Petition, ECF No. 1, PageID 64). Hartman first raised this claim in post-conviction and Judge Tucker denied it on the merits, finding the choice of a bench trial rather than a jury trial is a matter of strategic choice. The Second District affirmed on the merits and the Report recommended deference to that decision (ECF No. 22, PageID 2178).

The Objections again focus on what information must be conveyed to a defendant to make his waiver of a jury trial knowing, intelligent, and voluntary. Counsel's reliance for proof of what Hartman did not know is almost entirely on the Beth Horvath Affidavit, but a defense attorney's performance is not to judged on the basis of what he tells a defendant's parents and grandparents.

The one point on which the Magistrate Judge believes the Report is in error on this Ground for Relief is trial counsel's failure to investigate sufficiently the facts on which he relied in advising

the jury waiver.  It is apparently conceded that Conard told Hartman that Judge Tucker had raised three sons and would therefore "understand" the situation in which Hartman found himself on December 31, 2013.  It is also apparently conceded that Judge Tucker has in fact raised three daughters instead of three sons.

The Magistrate Judge offers no comment on whether that difference is likely to have affected Judge Tucker's analysis of the evidence.  Nor can Conard be faulted for having based his decision in part on ways in which Judge Tucker's life situation and experiences might impact the judgment.  It is part of a lawyer's stock in trade to know the bench before which he or she practices[6].  But when a lawyer considers a particular fact about a judge to be particularly relevant to a particular case, it is deficient performance to give a client advice so wrong on the facts as Conard's advice was about the gender of Judge Tucker's children.  To be clear, the Magistrate Judge is not offering a personal opinion about whether this fact had any impact on Judge Tucker's decision.  Rather, because Conard considered it critical and persuaded his client that it was critical, he had a duty to investigate and be accurate in his advice on this point.

Hartman was prejudiced by this deficient performance.  The case turned on the competing credibility of Hartman and Weckesser.  Both were young adult college students who had admittedly consumed a great deal of alcohol.  Neither was shown to have made inconsistent pretrial statements.  Under those circumstances, it is probable that at least one juror would have believed Hartman, causing a mistrial.

On this basis, the Magistrate Judge recommends relief be granted on Hartman's Twelfth Ground for Relief.

---

[6] See Jerome Frank, Courts on Trial (Princeton, 1949).

**Certificate of Appealability**

In the Report, the Magistrate Judge delayed any certificate of appealability recommendation until after Judge Rice ruled on the Report and this Supplemental Report. Petitioner declines to comply with that procedure because he says it will deprive him of "the right to object to any recommendations made by the Magistrate Judge in the first instance. . . ." (ECF No. 27, PageID 2310). That would not be the effect. Rather the need to rule on a certificate of appealability would preclude entry of an appealable judgment until that ruling was made. Because the question of appealability is dispositive, the Magistrate Judge would file a report and recommendations on that question, subject to the usual objection and review process under Fed.R.Civ.P. 72(b)(3). To rule at this point based only on the inclusion of argument on appealability in Petitioner's Objections would not afford Respondent an opportunity to be heard on that question.

Accordingly, the Magistrate Judge will not make a recommendation on appealability at this point, but will adhere to the schedule set forth in the Report: Petitioner shall file a motion for certificate of appealability not later than fourteen days after Judge Rice rules on any objections to the Report or this Supplemental Report.

**Conclusion**

In accordance with the foregoing analysis, the Magistrate Judge respectfully recommends

that the Court grant a conditional writ of habeas corpus on that part of Ground Six asserting ineffective assistance of trial counsel in the cross-examination of Weckesser, Potter and Norris and on Ground Twelve.  The condition of the writ should be that the State of Ohio release Hartman from custody on his conviction unless he is retried and re-convicted within 180 days from the issuance of the writ.  The Magistrate Judge continues to recommend that the Petition be dismissed in all other respects.


March 22, 2021.

s/ Michael R. Merz
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.