IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK HARTMAN,                              :

        Petitioner,                        Case No. 3:19-cv-003

    v.                                    :

OHIO ADULT PAROLE                               JUDGE WALTER H. RICE
AUTHORITY,
                                           :
        Respondent.

---

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN PART UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #22); SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS THERETO (DOC. #27); ADOPTING IN PART AND REJECTING IN PART SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. #29); SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS THERETO (DOCS. ##34, 35); JUDGMENT TO BE ENTERED GRANTING PETITIONER A CONDITIONAL WRIT OF HABEAS CORPUS ON GROUND SIX, SUB-ISSUE TWO, AND IN FAVOR OF RESPONDENT AND AGAINST PETITIONER ON ALL OTHER GROUNDS; GRANTING CERTIFICATE OF APPEALABILITY ON GROUND SIX, SUB-ISSUE TWO AND GROUND TWELVE; DENYING CERTIFICATE OF APPEALABILITY ON ALL OTHER GROUNDS; TERMINATION ENTRY

---

Petitioner, Mark Hartman ("Hartman" or "Petitioner"), was convicted on three counts of rape, in violation of Ohio Revised Code § 2907.02(A)(2), on October 9, 2014.  Doc. #1, PageID#4.  Petitioner filed his Motion for a new trial on October 23, 2014.  *Id.*  After a hearing on that Motion, Petitioner's request was denied on March 6, 2015.  *Id.*  Petitioner was sentenced to four years on each

count, all to run concurrently, on March 11, 2015. *Id.* Petitioner was also designated a Tier III sex offender, pursuant to Ohio Revised Code § 2950.01(G). *Id.* at PageID##1-2.

Petitioner timely filed his direct appeal to the Second District Court of Appeals, raising several issues. *See* Doc. #5-1, PageID##317-48. He was denied relief on all grounds. *See State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519 (2d Dist). He sought review in the Ohio Supreme Court, but that Court declined jurisdiction to hear the case. *See* Doc. #5-2, Ex. 17, PageID##409-26; *see also State v. Hartman*, 2016-Ohio-7199 (Ohio 2016). Petitioner also sought post-conviction remedies in all three courts but was denied relief. *See* Doc. #1, PageID#5; *see also State v. Hartman*, 2017-Ohio-7933 (Second District opinion); 2018-Ohio-923 (Ohio 2018) (Ohio Supreme Court denial of appellate review).

Petitioner filed his Petition for Writ of Habeas Corpus, Doc. #1, with this Court on January 3, 2019. In his Petition, Petitioner raised twelve separate grounds for habeas relief. *See* Doc. #1. In response, Tim Shoop, as acting Warden of the Chillicothe Correctional Facility, filed a Return of Writ, Doc. #6, with this Court on April 17, 2019. Petitioner filed his Traverse, Doc. #18, on August 15, 2019.

On August 21, 2019, Magistrate Judge Michael R. Merz granted an unopposed Order Substituting Respondent, Doc. #20, thereby substituting the Ohio Adult Parole Authority ("Respondent") as Respondent in place of Warden

Shoop.[1]  This substitution was granted because Petitioner was "released from imprisonment in the custody of Warden Shoop to post-release control in the custody of the Ohio Adult Parole Authority."  Doc. #20, PageID#2096.[2]

On April 23, 2020, Magistrate Judge Merz issued his initial Report and Recommendations, Doc. #22, recommending that Petitioner's Petition be dismissed with prejudice.  Doc. #22, PageID#2178.  Petitioner, in response, filed his Objections to [the] Magistrate Judge's Report and Recommendations, Doc. #27, on September 3, 2020.  Respondent did not file any reply to Petitioner's Objections.  After making a preliminary examination of Petitioner's Objections, this Court, pursuant to Fed. R. Civ. P. 72(b)(3), recommitted this matter to Magistrate Judge Merz, requesting a supplemental report analyzing the Objections and making recommendations based on that analysis.  Doc. #28.

Magistrate Judge Merz filed his Supplemental Report and Recommendations, Doc. #29, on March 22, 2021.  After a thorough consideration of Petitioner's Objections, Magistrate Judge Merz altered his initial conclusion, recommending that this Court grant a conditional writ of habeas corpus on two Grounds:

---

[1] The Court will not distinguish between Shoop and the Ohio Adult Parole Authority when referring to "Respondent" throughout its Decision, because that distinction does not affect the Court's thorough *de novo* review of the case or the applicable law.

[2] The Court notes, as Respondent did in its Return of Writ, that Petitioner's release from incarceration to post-release control does not moot his habeas petition.  Doc. #6, PageID#1104, n.1; *see also Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (quoting *Spencer v. Kenna*, 523 U.S. 1, 7 (1998) (stating that a petition for habeas relief, challenging the constitutional validity of a conviction, is not rendered moot simply because the petitioner is released to post-release control).

1. <u>Ground Six, Sub-Issue #2</u>: That trial counsel provided ineffective assistance of counsel in cross-examining Weckesser, Potter, and Norris.[3]
2. <u>Ground Twelve</u>: That trial counsel provided ineffective assistance of counsel when Petitioner was counseled to waive his right to trial by jury.

Doc. #29, PageID##2350-51. Magistrate Judge Merz renewed his original position regarding Petitioner's remaining claims, once again recommending that they be dismissed with prejudice. *Id.*

Petitioner filed his Objections to [the] Magistrate Judge's Supplemental Report and Recommendations, Doc. #34, on June 5, 2021. Respondent also filed its Objections to [the] Supplemental Report and Recommendation[s], Doc. #35, on the same date. On July 12, 2021, the parties filed their Responses to the opposing party's Objections. Docs. ##40, 41.

Based upon a thorough *de novo* review of this Court's file and the applicable law, the Court ADOPTS IN PART AND REJECTS IN PART the recommendations of Magistrate Merz set forth in his April 23, 2020, Report and Recommendations, Doc. #22, and his March 22, 2021, Supplemental Report and Recommendations, Doc. #29. The Court GRANTS the Petition for Writ of Habeas Corpus, Doc. #1, on Ground Six, Sub-part Two, but DISMISSES all other Grounds WITH PREJUDICE.

---

[3] The record establishes that Petitioner was represented by two attorneys during his criminal trial, Christopher Conard and Sasha Blaine. *See* Doc. #7-1, PageID#1189 (Transcript of Proceedings, Bench Trial of Mark Hartman, Case No. 2014-CR-00834). Petitioner makes several references to his trial counsel in the plural. *See, e.g.,* Doc. #1, PageID#32 ("Trial counsel were ineffective . . ."). For purposes of this opinion, the Court will refer to trial counsel in the singular and, if necessary for its analysis, will delineate between counsel Conard and counsel Blaine.

**Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as codified as amended at 28 U.S.C. § 2254(d), limits when federal habeas courts are permitted to grant relief. Under the AEDPA, an application for habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless said adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The AEDPA "dictates a highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). If the state court did not evaluate the merits of the claim, the habeas court will review the claim *de novo*. *Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020) (quoting *Rice v. White*, 660 F.3d 242, 252 (6th Cir. 2011)).

**Legal Analysis**

Due to the extensive filings in this case, the Court will analyze each Ground separately, providing a short synopsis of the procedural filings before expounding upon its reasoning and decision.

## A. Ground One: Insufficient Evidence

In his First Ground for Relief, Petitioner claims that he was convicted on insufficient evidence in violation of the constitutional standard outlined in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See* Doc. #1, PageID##15-22. Respondent defended Ground One on the merits, stating that the opinion of the Second District Court of Appeals was entitled to deference under the AEDPA. *See* Doc. #6, PageID##1137-50. In his initial Report and Recommendations, Magistrate Merz provided an extensive excerpt from the Second District Court of Appeals, laying out the relevant facts in the underlying case. Doc. #22, PageID##2102-07 (quoting *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 2-14 (2d Dist.)). Magistrate Merz also provided an extensive section of the facts, as considered by the Second District Court of Appeals in its analysis of the sufficiency of the evidence. Doc. #22, PageID##2107-11 (quoting *Hartman*, 2016-Ohio-2883 at ¶ 23-33).

Magistrate Merz reasoned that "[t]hese preliminary findings of fact by Judge Tucker [were] very relevant to Weckesser's state of mind as to whether she felt compelled." *Id.* at PageID#2116. After discussing how the evidence presented to the trial court was sufficient, Magistrate Merz then analyzed the reasoning of the Second District Court of Appeals. *Id.* at PageID##2118-22. He concluded that this claim should be denied on the merits. *Id.* at PageID#2122.

In response, Petitioner raised his Objections to the Magistrate's Report and Recommendations, arguing that Magistrate Merz "misapprehended" the culpable mental state and the "force or threat of force" elements of rape. *See* Doc. #27,

PageID##2197-2213.  Throughout his lengthy discourse, Petitioner largely reiterates the same arguments made in his initial filings.  *See id.,* PageID##2197-2213; *see also* Doc. #1, PageID##15-22 (Petition for Writ outlining Ground One); Doc. #18, PageID##1947-80 (Petitioner's Reply).

After reviewing Petitioner's Objections, Magistrate Merz, in his Supplemental Report and Recommendations, expounds upon his analysis by focusing on the three contentions Petitioner raised in his Objections: (1) failing to consider the victim's "initial consent, actions, and subterfuge"; (2) failing to consider the victim's alcohol consumption the night of the incident while wrongly considering the Defendant's alcohol consumption; and (3) any "misapprehension" in his analysis regarding the "force or threat of force" element of rape.  *See* Doc. #29, PageID#2322-28; *See also* Doc. #27, PageID##2198-2206.  Magistrate Merz concluded in his Supplemental Report and Recommendations that each of these contentions was without merit.  *See* Doc. #29, PageID#2322-28.

In his Objections to the Supplemental Report and Recommendations, Petitioner raises three points.  First, that Magistrate Merz "failed to address the sufficiency of the evidence" under the proper constitutional standard.  Doc. #34, PageID##2374-77.  Second, that Magistrate Merz erred in determining that "the state court decisions on the *mens rea* element were reasonable determinations of fact in light of the evidence and reasonable applications of United States Supreme Court precedent."  Doc. #34, PageID#2377-88.  Lastly, Petitioner claims that Magistrate Merz erred in determining that "the state court decisions on the

element of force were reasonable determinations of fact in light of the evidence and reasonable applications of the United States Supreme Court precedent." *Id.* at PageID##2388-2400.  For efficiency purposes, this court will analyze Petitioner's first objection separate from his second and third.

    1) <u>Petitioner's First Objection, that Magistrate Merz "Failed to Address the Sufficiency of the Evidence" Under the Proper Constitutional Standard, is Without Merit.</u>

Petitioner contends that "[t]he Magistrate Judge in this matter did not assess the sufficiency of the evidence but only the reasonableness of the trial judge's decision."  Doc. #34, PageID#2376.  The Court disagrees.  When analyzing a claim for insufficient evidence in a habeas corpus petition, the Court must apply two levels of deference:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 204-205 (6th Cir. 2009).

In order to determine whether the evidence was sufficient, as required by

*Jackson* and the AEDPA, Magistrate Merz analyzed the underlying facts, as

outlined by the Second District, in its decision on direct appeal:

> [*P3] During his winter break from college, Mark Hartman agreed to
> spend the evening with his best friend, Gordon, who was
> housesitting at the home of a family friend. Hartman, Gordon, and
> one other friend were drinking heavily. Gordon texted a female
> friend, Courtney, inviting her to the party. Courtney agreed, and
> brought two of her girlfriends with her, M.W. and Cassie. The women
> arrived at the party around 11:00 p.m. Some time during the evening,
> M.W. texted her parents to let them know she would not be returning
> home that evening. After about one hour at the party, Cassie texted
> her friends to silently communicate that she wanted to leave,
> because she was allergic to the dog in the house. Courtney and M.W
> left the party and took Cassie back to Courtney's house, where she
> had left her car. M.W. and Courtney returned to the party after 1:00
> a.m. and joined the men in their drinking and card-playing.
>
> [*P4] After the third male went to bed, Courtney and Gordon were in
> the bathroom together, which left M.W. and Hartman alone in the
> living room. M.W. testified that she wanted to go to bed, and
> Hartman agreed to show her to a bedroom. M.W. testified that she
> was a willing participant when Hartman began to kiss her. After this
> point, M.W.'s and Hartman's versions of the facts began to diverge.
>
> [*P5] M.W. testified that after she and Hartman entered the bedroom,
> he initiated kissing, and she was okay with that. She testified that as
> Hartman continued to kiss her, he put his hand up her shirt, she said
> no, and he stopped. M.W. testified that "then we kept kissing and he
> pushed me onto the bed, and then he went up my shirt again. And
> again I said no. Which was fine. So we kept - - we kissed again. And
> then that's when he started to go down my pants, and I said no. And
> that's when it didn't stop. He just kept saying things like, it's fine, it
> will be okay, it will be fun, stuff like that. So then he went ahead and
> took off my shirt and bra." Trial Transcript at 29.
>
> [*P6] M.W. testified that she began to get nervous because she was
> not sure what was going to happen. She testified that Hartman

continued to go down her pants again as he was kissing her, and she kept saying "no, that I didn't want to do that." *Id.* at 30. She described that he removed her shirt, bra, and leggings, and then removed his own clothes. She testified, "that's when I basically just started to get really scared about the situation and wasn't sure how to handle the situation." *Id.* She explained the basis of her fear by testifying:

> I was scared because I knew that I was not as strong as he was, and I knew that if he would have done anything like hit me or anything like that I would have been out and I wouldn't have really remembered what had happened. And it was more important to me to remember what was happening to me than not know what was happening to me. As a girl growing up in your teenage years, you hear a ton of stories about what people can do to you and what, you know, strangers do and you don't know the person and you're not sure what they're going to do. So it just really scared me to not - - like and I didn't know who was around me. I didn't know where Courtney was. I didn't know where anyone else in the house was. And I just got really scared that something bad might have happened to me. And then I kept thinking that in this situation I can outsmart the situation, and you know, I can get out the smart way. And I like have been told how to get out of these situations and how to be smart. So that's what I kept thinking, was how I was going to get out because I knew I wasn't strong enough. And I was worried about being hit, or something.

*Id.* at 32.

[*P7] M.W. testified that Hartman continued to kiss her — causing the hickeys on her neck, and he continued to touch her in different places, including penetrating her vagina with his fingers. When asked what she was doing at this point, M.W. responded:

> I was just sitting there. A few times I had started to go along with it because I thought that if I went along with some of it, he might let me go and he might think that I was like kind of into it, too, and that if he thought that, that he might let me leave or like go and do something to the point where I could try and get out and escape. But basically, the whole time I would say no

before and I just kind of sat there. I wasn't really into it or doing anything back. I was just there.

*Id.* at 35.

[*P8] M.W. testified that Hartman proceeded to penetrate her vagina with his penis after she said no, and that he kept saying "like its okay, it will be fine, it will be fun, don't worry about it." *Id.* at 36. M.W. testified that she kept saying no, and was numb because she was so scared. She testified that he stopped, took a break, and then began touching her again, and again penetrated her vagina with his penis. Afterwards, M.W. testified that she left the room and went into the bathroom, and that Hartman followed her, and began kissing her again. She described that he grabbed her arms, using enough force to pull her into the shower with him. She again testified that she "started to go along with it, too, because I was scared it was going to happen again and I wanted to get out of the situation, and I was like maybe -- again, I kept thinking the same thing. If I go along with this, there might be a chance that I can get out of this situation. So that's what I kept thinking the whole time was if I go along with this for a little bit, there might be a chance that I can get out and this wouldn't have happened to me." *Id.* at 40.

[*P9] M.W. testified that after they showered, they returned to the bedroom, and Hartman began kissing her again, pushed her back onto the bed and again he penetrated her vagina with his penis. M.W. testified that "I was just so numb and didn't really feel like fighting back because I was so scared. And I was like, you know what, I'll just let it happen and then it will be done and then I'll get out of the situation." *Id.* at 41. M.W. testified that when he was done, she attempted to leave the bed, but he pulled her back into the bed. When she thought Hartman was asleep, she tried to move, but he was still awake and he asked her to stay. M.W. testified that she agreed to stay there with him "because I didn't want anything to happen again." *Id.* at 42.

[*P10] Hartman's version of the facts was presented through the admission of a written statement he gave to the police the day after the event, State's Ex. 24, the testimony of the officer who interviewed him, and from Hartman's testimony at trial. Hartman admitted that he was intoxicated earlier in the evening, but he testified that he had stopped drinking alcoholic beverages, and was drinking water before the sexual encounter. He testified that M.W. initiated intimacy by

kissing him before they went to the bedroom. He testified that they engaged in a good amount of kissing, and when he began to feel her breasts, and when he slid his hand down her pants, he specifically asked if she would like to have sex, and she answered yes. He testified that she willingly participated in the sexual encounter by helping to remove her own clothes and his clothes, asked him to squeeze her breasts and guided his hand, switched positions, and upon request willingly engaged in oral sex. Hartman testified that the only time she said "No" was when he asked if "we could have sex until we finished, and she said no at that time." He stated that he stopped after she said "No," and then they conversed a bit, talking about life, relationships and school, and then he asked again "if we could finish," and she said, "Yes, go ahead." Because he did not have a second condom, he asked if she was on birth control, and she replied, "you really think I would have sex with a random 20 year[s] old without birth control?" His testimony that he pulled out and ejaculated on the bed was later corroborated by DNA testing on the bed coverings. The fact that M.W. was taking birth-control medication was reflected in hospital records.

[*P11] The victim's testimony reflects that she did have her cell phone with her that evening -- she received a text from the other female at the party that she wanted to go home, and she texted her parents to tell them she would not be coming home that evening. The text messages that M.W. and her friend Courtney sent to each other later that morning were admitted into evidence as defendant's Ex. H. In the text messages, M.W. expressed reluctance about reporting the sexual assault, in the following exchange:

> M.W.: I need to think about if I want to press charges or not.
> Courtney: What are you thinking?
> M.W.: I don't know. I really don't know.
> Courtney: Are you wanting to confront him?
> M.W.: No. I don't ever want to talk to him. I just don't know if I should press charges and it'll be big because "rape in the [R.] house."
> Courtney: I didn't even think of that. He needs to know what he did was wrong. Was protection used? And did you shower before or after? As far as the [Rs], oh well.
> M.W.: I know. I agree but I can't handle a big thing. I can't even remember things because I was so in shock. I'm not sure if he did it [or] not. And in between.

[*P12] After M.W. told her parents what had happened to her, she was taken to the hospital, arriving at 3:39 P.M. She was initially examined by an ER doctor, then she talked to the police detective, and then she was referred to a nurse designated as a "sexual assault nurse examiner."1 This nurse interviewed M.W., making notes, Ex. 20, which recorded the victim's allegations as follows:

> Courtney and I went back to the house that one of the guys was housesitting for. Me and Mike was taking a tour of the house when he showed me to the bedroom which was downstairs. Mike kissed me on the lips and tried to take my shirt off and I said no, I'm not doing that. He (clarified with patient that he was Mike) kept kissing me over and over again and I kept yelling at him, telling him to stop. That's when things went from bad to worse. Mike pushed me on the bed and I landed on my back. He kept trying to kiss me and this time pulled off my shirt. He held my hands down beside me and kissed all over my neck, face and chest. He (clarified with patient that he is Mike) pulled off my leggings. I kept telling him no, get off of me, but he didn't. He had sex with me and stuck his hands inside of me. I managed to get free and go to the bathroom, and he followed me in there, grabbing my arms trying to pull me in the shower, asking me to take a shower with him. When I wouldn't he got mad and pulled on my arms back into the bedroom. He raped me again. Clarified with patient that Mike stuck penis and hands inside of vagina. I kept trying to leave but he wouldn't let me. My friend finally came upstairs and got me out of there.

[*P13] The medical records also indicate that during the process at the hospital, the victim's parents were present, and also present were the victim witness advocate, an Oakwood police officer and an Oakwood police detective. The medical records confirm that M.W. was not physically injured during the assault, other than the neck bruising referred to as hickeys. M.W. testified that since the event, she is no longer a social person, that she is scared to do anything, and no longer goes anywhere alone.

[*P14] The day after the alleged incident, defense counsel advised Hartman to create a written description of everything about the incident, which was given to police two days after the incident. Defense counsel accompanied his client to two police interviews. Hartman freely answered all questions asked during the interviews.

Doc. #22, PageID##2102-07 (quoting *State v. Hartman*, 2016-Ohio-2883 at ¶ 2-14.

Magistrate Merz also considered the decision of the Second District Court of

Appeals:

> THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS.
>
> [*P24] Hartman was indicted for three counts of Rape, in violation of R.C. 2907.02(A)(2). Under this section, to obtain a conviction for Rape, the State must prove beyond a reasonable doubt that the accused engaged in sexual conduct with another by purposely compelling the other person to submit to the sexual conduct by force or threat of force. Hartman has admitted that he engaged in sexual conduct with another. The question is whether sufficient evidence was presented to prove beyond a reasonable doubt that he purposely compelled M.W. to submit to the sexual conduct by force or threat of force.
>
> [*P25] A challenge to the sufficiency of the evidence presents a question of law as to whether the State has presented adequate evidence on all elements of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jackson*, 2d Dist. Montgomery No. 26050, 2015-Ohio-5490, P 41, 63 N.E.3d 410, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
>
> [*P26] Pursuant to R.C. 2901.22 (A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Therefore, in a Rape case, to prove that the defendant acted "purposely," the State must prove that it was the defendant's

intention to engage in sexual conduct by forcefully compelling the other person to submit to the sexual conduct. "A rape occurs only if the perpetrator purposely compels the other to submit by force or threat of force." *State v. Wilkins*, 64 Ohio St.2d 382, 385, 415 N.E.2d 303 (1980).

[*P27] Ohio's rape statute does not require proof of the victim's lack of consent. Ohio law does recognize certain victims incapable of giving consent, based on mental or physical incapacity. Those exceptions do not apply in the case before us. *See, e.g., State v. Hillock*, 7th Dist. Harrison No. 02-CA-538, 2002-Ohio-6897. Consent is not an affirmative defense, but when applicable, consent is used as a defense to challenge the State's evidence on the element of purposeful force or compulsion. *State v. El-Berri*, 8th Dist. Cuyahoga No. 89477, 2008-Ohio-3539, P 57. When consent is raised as a defense to a charge of Rape, the test of whether consent negates a finding of force is not whether a reasonable person confronted with similar circumstances would have understood that the victim did not consent, the test requires the trier-of-fact to find, beyond reasonable doubt, that the specific defendant's purpose or intent was to commit the crime of rape. *State v. Mundy*, 99 Ohio App.3d 275, 650 N.E. 2d 502 (2d Dist. 1994). As we discussed in *Mundy*:

> The determination of a defendant's mental state, absent some comment on his or her part, must of necessity be determined by the nature of the act when viewed in conjunction with the surrounding facts and circumstances. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. This is, in fact, the well-recognized process of inferential reasoning. This process by necessity incorporates an objective mechanism or standard in determining the defendant's state of mind by the use of circumstantial evidence. The trier of fact reviews the defendant's conduct in light of the surrounding facts and circumstances and infers a purpose or motive.

*Id.*, 99 Ohio App.3d at 288, 650 N.E.2d 502.

[*P28] R.C. 2901.01(A)(1) defines "force" as any "violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In the case before us, the trial court did not find that Hartman used physical constraint or any form of violence that caused physical harm during the sexual encounter. The trial court did not find that Hartman constrained the victim in any way

or that the victim exhibited physical resistance to Hartman's advances. However, the trial court did find that Hartman "pushed" M.W. onto the bed, removed her clothes, laid on top of her, and pulled her into the shower. It has been recognized that proof of physical violence or physical resistance is not required to establish Rape if the defendant creates in the mind of the victim the belief that physical force will be used if the victim does not submit. *State v. Umphries*, 4th Dist. Ross No. 11CA3301, 2012-Ohio-4711, P 21, and P 16, citing *State v. Schaim*, 65 Ohio St. 3d 51, 55, 1992 Ohio 31, 600 N.E. 2d 661 (1992). "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Umphries* at P16, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 27 Ohio B. 182, 500 N.E .2d 390 (8th Dist. 1985).

[*P29] In the case before us, the victim testified that her will was overcome by fear, because she believed she would be hurt if she did not submit to Hartman's advances. To find that her will was overcome by fear, the trier-of-fact must have sufficient evidence from which to infer that her fear was based on some wrongful action or conduct of the defendant that purposely compelled her to submit to the sexual conduct, against her will. In the case before us, the trial court stated, "that the force element must be viewed within the context of M.W.'s concerns regarding Mr. Hartman's size and strength, that Mr. Hartman was intoxicated, that she did not know Mr. Hartman, and that, as the sexual conduct was occurring, she did not know the location of the remaining occupants of the house." Dkt. #80, pg. 10.

[*P30] Hartman testified that he is 6'3", weighed 200 pounds, and was physically fit. Medical records reflected that M.W. is 5'3" and weighed 165 pounds. Hartman and M.W. were both 20 years old, and both were college students. The victim testified that she was scared because she was not as strong as Hartman, and she believed that he would use his superior strength to hurt her if she did not submit to his sexual advances. The victim testified that she repeatedly said "No" to Hartman during the sexual encounter. The physical force described by the victim included her testimony that Hartman

"pushed" her onto the bed, removed her clothing, laid on top of her, and "pulled" her into the shower.

[*P31] Each of the cases cited by the State addressing the issue of force is distinguishable from the case before us. In *Umphries*, the victim felt compelled to submit out of fear when she awoke during the night to find her uncle on top of her, who had broken into the house through a window, and she begged him to stop. *State v. Umphries*, 4th Dist. Ross No. 11CA3301, 2012-Ohio-4711. There was no admission that the victim in *Umphries* was a willing participant to any part of the encounter, and she communicated her fear by begging him to stop. *Id.* The victims in *Whitt, Shannon*, and *Eskridge* were minors. *State v. Whitt*, 8th Dist. Cuyahoga No. 82293, 2003-Ohio-5934; *State v. Shannon*, 11th Dist. Lake Nos. 2002-L-007, 2002-L-008, 2004-Ohio-1669; *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). In *State v. Patel*, we found sufficient evidence of force when an employer held his employee "in a locked bathroom and inserted his finger in her vagina against her will and while ignoring her plea to stop." *State v. Patel*, 2d Dist. Greene No. 2010CA77, 2011-Ohio-6329, P 63. Unlike in the case before us, the defendant in *Patel* locked the room to prevent the victim from leaving, and no part of the sexual encounter was consensual. *Id.* None of the cited cases present a fact pattern in which a sexual encounter between adults starts out as consensual, before changing into a non-consensual encounter.

[*P32] We agree that the elements of Rape can be established when the two participants start the sexual encounter on a consensual basis, but the consent is revoked by words, actions or conduct that clearly communicates non-consent, the defendant fails to respect the change in consent, and purposely proceeds to engage in sexual conduct through force or threat of force evidenced by violence, physical restraint, or some type of coercive or threatening conduct that creates a belief or fear that physical force will be used if the victim does not consent. In the case before us, both the defendant's physique -- he was bigger and stronger than his victim -- and his conduct of pushing the victim on the bed, removing her clothes, and pulling her into the shower, was evidence from which a reasonable finder of fact could find that he purposely acted in a manner that induced fear in the victim, compelling her to submit to his sexual conduct, against her will.

[*P33] Based on our review of the record, we conclude that the State did present sufficient evidence from which the trier of fact could conclude that Hartman purposely compelled M.W. to submit to sexual conduct by force or threat of force. There is no dispute that it was Hartman's intention to engage in sexual conduct with M.W. Also, the testimony of the victim, if believed, supports a finding that Hartman used force to compel M.W. to submit to sexual conduct at least three times during the course of the evening. Hartman's First Assignment of Error is overruled.

Doc. #22, PageID##2107-11 (quoting *Hartman*, 2016-Ohio-2883 at ¶ 23-33).

In his Report and Recommendations, Magistrate Merz explained how these preliminary facts were relevant to the ultimate decision made by Judge Tucker at trial. *See* Doc. #22, PageID##2114-18. Magistrate Merz stated that:

Petitioner discounts Weckesser's testimony about her fears which she said arose in part from what she had learned growing up about possible harms from 'date rape' situations. But the aggressor in a sexual situation takes his victim as he finds her. The State had to prove that Weckesser was in fear and her explanation of why she was in fear [was] appropriate.

*Id.* at PageID# 2116. Additionally, Magistrate Merz opined that:

Counsel repeat many times that Weckesser came back to the Routsong house intending to stay the night, that she knew Hartman had been drinking heavily, that she had never been in the house before and did not know its layout, that this was the first time she had ever met Hartman (Reply, ECF No. 18, PageID 1961-65). She also knew when she went back to the house that her girlfriend Courtney had been sexual partner of the other awake male present, Gordon, so that if the two of them went to bed together, she would likely be 'left' with Hartman. She also had in her head when she went back all of the accumulated 'horror' stories that she had learned in her teenage years about the dangers of date rape. Nonetheless she went back. She took a very serious risk . . . [b]ut taking a risk is not the same as giving consent.

*Id.*

Magistrate Judge Merz expounded on the sufficiency of the evidence when he addressed Petitioner's specific concerns in his Supplemental Report and Recommendations. *See* Doc. #29, PageID##2321-28. Based upon the *de novo* review by this Court, the Court finds that Magistrate Merz adequately explained how "[when] viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" under the first level of deference required in this analysis. *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. 319).

Based on the facts presented, coupled with Magistrate Merz's thorough analysis, this Court believes that Magistrate Merz correctly "applied the doubly deferential standard applicable to *Jackson* claims after enactment of the Antiterrorism and Effective Death Penalty Act of 1996." Doc. #29, PageID#2322. As such, this objection is without merit.

2) <u>Petitioner's Second and Third Objections Are Simply Reiterations of Petitioner's Arguments and Will Not Be Analyzed By this Court</u>.

After examining Petitioner's Second and Third Objections to the Supplemental Report and Recommendations, this Court believes that Petitioner has not raised any new objections to Magistrate Merz's findings, but rather, simply reiterated his initial arguments. *Compare* Doc. #18, PageID##1947-80 (Petitioner's Reply); Doc. #27, PageID##2197-2213 (Petitioner's Objections to the Report and Recommendations); and Doc. #34, PageID##2377-2400 (Petitioner's

Objections to the Supplemental Report and Recommendations). As repeatedly held by other district courts in the Sixth Circuit, a petitioner's restatement of his or her arguments does not constitute a proper objection. *See, e.g.*, *Roach v. Hoffner*, Case No. 1:13-cv-42, 2016 U.S. Dist. LEXIS 11820, *3 (W.D. Mich. Feb. 2, 2016); *Green v. Andrews*, Case No. 07CV2093, 2010 U.S. Dist. LEXIS 47694, *17-19 (N.D. Ohio May 14, 2010). As such, the Court declines to elaborate further beyond Magistrate Merz's well-reasoned analysis on this issue. *See* Docs. #22, 29.

Therefore, based upon Magistrate Merz's lengthy discourse in his original Report and Recommendations, as well as the Supplemental Report and Recommendations, this Court concurs with Magistrate Merz's recommendations regarding Ground One. Further, Petitioner's Objections to [the] Magistrate's Supplemental Report and Recommendation have not persuaded this Court that Magistrate Merz erred in his analysis. Therefore, this Court ADOPTS Magistrate Merz's recommendations that Ground One should be denied on the merits. Doc. #22, PageID#2122; *see also* Doc. #29, 2321-28.[4]

## B. Ground Two: Retroactive Application of New Judicial Interpretation of Ohio's Rape Statute

In his Second Ground for Relief, Petitioner claims that his Due Process rights, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, were violated when the Second District Court of Appeals

---

[4] Any claim or Ground for Relief not procedurally defaulted and, therefore, considered on the merits that is decided against Petitioner is deemed denied. Any claim or Ground for Relief which the Court deems procedurally defaulted is deemed by the Court as dismissed.

"affirmed [his] convictions by retroactively applying new constructions of the elements of rape." Doc. #1, PageID##22-24. More specifically, Petitioner argues that the court of appeals rewrote the statutory requirement that the State prove that the defendant "purposely compels the other person to submit by force or threat of force." He maintains that the court instead required only that the defendant "purposely acted in a manner that induced fear in the victim," and eliminated the requirement that a threat has to cause the victim to believe that physical force will be used to compel submission. Doc. #18, PageID##1981-86.

The Second District Court of Appeals' discussion of Petitioner's claim was as follows:

> [*P26] Pursuant to R.C. 2901.22 (A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Therefore, in a Rape case, to prove that the defendant acted "purposely," the State must prove that it was the defendant's intention to engage in sexual conduct by forcefully compelling the other person to submit to the sexual conduct. "A rape occurs only if the perpetrator purposely compels the other to submit by force or threat of force." *State v. Wilkins*, 64 Ohio St.2d 382, 385, 415 N.E.2d 303 (1980).

> [*P27] Ohio's rape statute does not require proof of the victim's lack of consent. Ohio law does recognize certain victims incapable of giving consent, based on mental or physical incapacity. Those exceptions do not apply in the case before us. *See, e.g., State v. Hillock*, 7th Dist. Harrison No. 02-CA-538, 2002-Ohio-6897. Consent is not an affirmative defense, but when applicable, consent is used as a defense to challenge the State's evidence on the element of purposeful force or compulsion. *State v. El-Berri*, 8th Dist. Cuyahoga No. 89477, 2008-Ohio-3539, P 57. When consent is raised as a defense to a charge of Rape, the test of whether consent negates a finding of

force is not whether a reasonable person confronted with similar circumstances would have understood that the victim did not consent, the test requires the trier-of-fact to find, beyond reasonable doubt, that the specific defendant's purpose or intent was to commit the crime of rape. *State v. Mundy*, 99 Ohio App.3d 275, 650 N.E. 2d 502 (2d Dist. 1994). As we discussed in *Mundy*:

> The determination of a defendant's mental state, absent some comment on his or her part, must of necessity be determined by the nature of the act when viewed in conjunction with the surrounding facts and circumstances. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. This is, in fact, the well-recognized process of inferential reasoning. This process by necessity incorporates an objective mechanism or standard in determining the defendant's state of mind by the use of circumstantial evidence. The trier of fact reviews the defendant's conduct in light of the surrounding facts and circumstances and infers a purpose or motive. *Id.*, 99 Ohio App.3d at 288, 650 N.E.2d 502.

[*P28] R.C. 2901.01(A)(1) defines "force" as any "violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In the case before us, the trial court did not find that Hartman used physical constraint or any form of violence that caused physical harm during the sexual encounter. The trial court did not find that Hartman constrained the victim in any way or that the victim exhibited physical resistance to Hartman's advances. However, the trial court did find that Hartman "pushed" M.W. onto the bed, removed her clothes, laid on top of her, and pulled her into the shower. It has been recognized that proof of physical violence or physical resistance is not required to establish Rape if the defendant creates in the mind of the victim the belief that physical force will be used if the victim does not submit. *State v. Umphries*, 4th Dist. Ross No. 11CA3301, 2012-Ohio-4711, P 21, and P 16, citing *State v. Schaim*, 65 Ohio St. 3d 51, 55, 1992 Ohio 31, 600 N.E. 2d 661 (1992). "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible

element of rape can be established." *Umphries* at P16, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 27 Ohio B. 182, 500 N.E .2d 390 (8th Dist. 1985).

*State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶¶26-28.

In his Report and Recommendations, Magistrate Merz, relying extensively on his prior analysis as outlined under Ground One, concluded that "[when] [r]ead in the context of the facts of this case and the decision as a whole, the Second District applied the previously established meaning of the statute: a defendant must by means of force (actual physical force) have compelled the victim to submit sexually, not just to have been afraid in some inchoate fashion." Doc. #22, PageID#2125.[5]

Petitioner filed Objections, again insisting that the Second District Court of Appeals improperly affirmed Petitioner's convictions by retroactively applying new constructions of the elements of rape. *See* Doc. #27, PageID##2213-19. Specifically, Petitioner claims that the Court of Appeals entirely re-wrote Ohio's rape law by requiring only that the defendant have "purposely acted in a manner that induced fear in the victim." Doc. #27, PageID#2216 (citing Doc. #5-2, Appendix, App. Dec., PageID#449, ¶ 32). Petitioner also disagreed with the Magistrate Judge's determination regarding the relevance of the victim's "state of mind" in determining whether Petitioner had the requisite intent. *See id.* at PageID#2217-19.

---

[5] For a reiteration of the underlying facts, as considered by Magistrate Merz, the Court would defer to the Second District Court of Appeals decision. *See supra* Ground One, Section One.

Magistrate Merz reaffirmed his recommendation in his Supplemental Report and Recommendations, stating that Petitioner's claim regarding Ground Two should be denied on the merits. *See* Doc. #29, PageID##2328-29. He noted that Petitioner failed to provide any citation to the record to support Petitioner's assertion that "Weckesser testified that she was compelled by fears from her own choices and stories from her past. Those facts, straight from the mouth of the State's primary witness – and confirmed by the State at trial – should have resulted in an acquittal." *Id.* at PageID#2329 (citing Doc. #27, PageID#2218).[6] Petitioner again filed Objections, raising similar arguments as those he previously raised. *See* Doc. #34, PageID##2400-04.

The Court concurs with Magistrate Merz's recommendations on Ground Two. The cited language from *State v. Mundy*, 99 Ohio App.3d 275, 650 N.E. 2d 502 (2d Dist. 1994), and *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), as outlined in paragraph twenty-seven of the decision of the Second District Court of Appeals, supports the conclusion reached by Magistrate Merz. Since Petitioner argued that the sexual encounter with Weckesser was consensual, the "determination of [Petitioner's] mental state . . . must of necessity be determined by the nature of the act when viewed in conjunction with the surrounding facts and circumstances." *Mundy*, 99 Ohio App.3d at 288 (quoting *Lott*, 51 Ohio St.3d at 168).

---

[6] Magistrate Merz also cited S.D. Ohio Civ. R. 7.2(b)(5), which requires that "all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced."

Under this premise, the Second District did not retroactively apply a new construction of the elements of rape, but rather, simply examined all the facts as required by *Mundy* and *Lott*:

[*P29] In the case before us, the victim testified that her will was overcome by fear, because she believed she would be hurt if she did not submit to Hartman's advances. To find that her will was overcome by fear, the trier-of-fact must have sufficient evidence from which to infer that her fear was based on some wrongful action or conduct of the defendant that purposely compelled her to submit to the sexual conduct, against her will. In the case before us, the trial court stated, "that the force element must be viewed within the context of M.W.'s concerns regarding Mr. Hartman's size and strength, that Mr. Hartman was intoxicated, that she did not know Mr. Hartman, and that, as the sexual conduct was occurring, she did not know the location of the remaining occupants of the house." Dkt. #80, pg. 10.

[*P30] Hartman testified that he is 6'3", weighed 200 pounds, and was physically fit. Medical records reflected that M.W. is 5'3" and weighed 165 pounds. Hartman and M.W. were both 20 years old, and both were college students. The victim testified that she was scared because she was not as strong as Hartman, and she believed that he would use his superior strength to hurt her if she did not submit to his sexual advances. The victim testified that she repeatedly said "No" to Hartman during the sexual encounter. The physical force described by the victim included her testimony that Hartman "pushed" her onto the bed, removed her clothing, laid on top of her, and "pulled" her into the shower.

[*P31] Each of the cases cited by the State addressing the issue of force is distinguishable from the case before us. In *Umphries*, the victim felt compelled to submit out of fear when she awoke during the night to find her uncle on top of her, who had broken into the house through a window, and she begged him to stop. *State v. Umphries*, 4th Dist. Ross No. 11CA3301, 2012-Ohio-4711. There was no admission that the victim in *Umphries* was a willing participant to any part of the encounter, and she communicated her fear by begging him to stop. *Id.* The victims in *Whitt, Shannon,* and *Eskridge* were minors. *State v. Whitt*, 8th Dist. Cuyahoga No. 82293, 2003-Ohio-5934; *State v. Shannon*, 11th Dist. Lake Nos. 2002-

L-007, 2002-L-008, 2004-Ohio-1669; *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). In *State v. Patel*, we found sufficient evidence of force when an employer held his employee "in a locked bathroom and inserted his finger in her vagina against her will and while ignoring her plea to stop." *State v. Patel*, 2d Dist. Greene No. 2010CA77, 2011-Ohio-6329, P 63. Unlike in the case before us, the defendant in *Patel* locked the room to prevent the victim from leaving, and no part of the sexual encounter was consensual. *Id.* None of the cited cases present a fact pattern in which a sexual encounter between adults starts out as consensual, before changing into a non-consensual encounter.

[*P32] We agree that the elements of Rape can be established when the two participants start the sexual encounter on a consensual basis, but the consent is revoked by words, actions or conduct that clearly communicates non-consent, the defendant fails to respect the change in consent, and purposely proceeds to engage in sexual conduct through force or threat of force evidenced by violence, physical restraint, or some type of coercive or threatening conduct that creates a belief or fear that physical force will be used if the victim does not consent. In the case before us, both the defendant's physique -- he was bigger and stronger than his victim -- and his conduct of pushing the victim on the bed, removing her clothes, and pulling her into the shower, was evidence from which a reasonable finder of fact could find that he purposely acted in a manner that induced fear in the victim, compelling her to submit to his sexual conduct, against her will.

[*P33] Based on our review of the record, we conclude that the State did present sufficient evidence from which the trier of fact could conclude that Hartman purposely compelled M.W. to submit to sexual conduct by force or threat of force. There is no dispute that it was Hartman's intention to engage in sexual conduct with M.W. Also, the testimony of the victim, if believed, supports a finding that Hartman used force to compel M.W. to submit to sexual conduct at least three times during the course of the evening. Hartman's First Assignment of Error is overruled.

*Hartman*, 2016-Ohio-2883 at ¶¶29-33.

The Court agrees with Magistrate Merz that, "[when] [r]ead in the context of

the facts of this case and the decision as a whole, the Second District applied the

previously established meaning of the statute." Doc. 22, PageID#2125. In determining whether Petitioner purposely compelled Weckesser to submit to sexual conduct by force or threat of force, the Court appropriately considered Petitioner's conduct-- the fact that he pushed her onto the bed, removed her clothes, laid on top of her and pulled her into the shower, even though she told him "no." In determining whether her will was overcome by fear, the court appropriately considered the surrounding facts and circumstances, including Petitioner's size, strength and intoxication, and the location at an unfamiliar house. Although she may have testified that she was afraid because she had heard bad stories about date-rape situations, Petitioner's size and his physical conduct in failing to honor her requests to stop also contributed to her fear and caused her to submit to his sexual advances.

Given that the Second District's analysis is consistent with previous constructions of Ohio's rape statute, nothing implicates due process concerns. Therefore, the Court ADOPTS Magistrate Merz's recommendation that Petitioner's Second Ground for Relief be denied on the merits. *Id.*; Doc. #29, PageID#2329.

### C. Ground Three: Insufficient Indictment

In his Third Ground for Relief, Petitioner claims that his rights "were violated when he was tried on an indictment that is constitutionally insufficient because it failed to ensure that the trial proceeded on the basis of the Grand Jury's findings, failed to give notice of the charges, and failed and continues to fail to shield him from subsequent prosecutions for the same offenses." *See* Doc.

#18, PageID##1986-2001. In his Petition, Petitioner states that his indictment "alleged only that 'sexual conduct' occurred" and that this phrase "includes a number of actions that were formerly separate crimes" including "'anal intercourse, cunnilingus, and fellatio' and the components of what used to be, under R.C. § 2907.12, felonious sexual penetration." Doc. #1, PageID#25. He claims that the absence of the specific type of conduct "let the State vary its theories of guilt throughout trial, let the trial court alter the basis of conviction at trial and in ruling on a motion for new trial, and left Hartman without notice of the charges or the assurance that the case he faced was the one presented to the grand jury." *Id.*

In its Return, Respondent states that Petitioner's claim is procedurally defaulted, pursuant to the holding of *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny, and cannot be considered by this Court. *See* Doc. #6, PageID##1125-28.[7] Citing Ohio Criminal Rule 12(C)(2), Respondent argues that Petitioner's failure

---

[7] *Wainwright v. Sykes* holds that non-compliance with a state procedural rule, when such non-compliance would preclude the state court from reaching a decision on the merits regarding the objection or claim, amounts to an adequate and independent state procedural ground and, therefore, results in that claim being procedurally defaulted and precluded from review during a habeas proceeding. *See* 433 U.S. 72, 86-87 (1977).

When examining whether noncompliance with a state procedure precludes analysis by the court on habeas review, courts in the Sixth Circuit employ the four-part analysis outlined in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986); *accord Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (applying *Maupin* to claim after AEDPA enactment). First, the court must determine whether Petitioner failed to comply with a procedural rule that is applicable to Petitioner's claim. *See Maupin*, 785 F.2d at 138. Second, the court must determine whether the state actually enforced the procedural rule. *Id.* Third, the court must determine whether the state procedural rule is an "adequate and independent" state ground on which the state can rely to foreclose federal review. *Id.* Lastly, the court considers whether Petitioner can establish "cause" to excuse the noncompliance. *Id.*

to raise any claim regarding the defective indictment prior to his initial trial should render this claim procedurally defaulted and, as such, would preclude consideration by this court.[8] *See* Doc. #6, PageID#1127-28. Petitioner responds in his Traverse that procedural default does not apply in this situation or, in the alternative, that cause and prejudice exist to excuse any procedural default due to trial counsel's ineffective assistance during the trial. Doc. #18, PageID##1986-2001.[9]

In his initial Report and Recommendations, Magistrate Merz concluded that Petitioner's claim for relief was barred by procedural default. Doc. #22, PageID#2139. Magistrate Merz provided an extensive analysis of the procedural default doctrine and the four-part analysis employed in the Sixth Circuit to determine whether a habeas claim is precluded by procedural default. He rejected Petitioner's claims of excusing cause and prejudice, and of actual innocence. *See id.* at PageID##2125-36. In the alternative, Magistrate Merz found that the claim

---

[8] Respondent also cited Ohio Revised Code § 2941.29, which states that "[n]o indictment or information shall be quashed, set aside, or dismissed, or motion to quash be sustained, or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment or information, unless the objection to such indictment or information, specially stating the defect claimed, is made prior to the commencement of the trial, or at such time thereafter as the court permits."

[9] Petitioner, in Ground Four, raises a separate argument regarding the ineffective assistance of counsel claim regarding trial counsel's failure to raise an objection to the indictment. *See* Doc. #1, PageID##27-30; Doc. #18, PageID##2001-09; Doc. #27, PageID##2223-31; Doc. #34, PageID##2404-19. Petitioner defers any arguments regarding the "cause" to excuse any potential procedural default to that section. *See, e.g.*, Doc. #27, PageID#2220 ("As is set out in more detail in Hartman's objections to denial of his Fourth Ground for Relief, trial counsel's ineffectiveness establishes cause."); Doc. #34, PageID#2406 (stating the same). Since the Court does not reach the merits of Ground Three, it declines to address how "cause" could be established here and would defer to the analysis in that Section. *See* discussion *infra* Ground Four.

should be dismissed on the merits, because the Second District had not

unreasonably applied clearly established federal law. As Magistrate Judge Merz

noted, "[t]he indictment stated the elements of the offenses in the language of the

statute and gave Hartman notice of the date these offenses allegedly occurred and

the potential severity of the punishment." *See id.* at PageID##2136-39.

Petitioner filed Objections to Magistrate Merz's Report and

Recommendations, largely citing the same arguments previously raised in his

initial filings. *See* Doc. #27, PageID##2219-23. Petitioner again argues that he can

show cause and prejudice to excuse his default due to his ineffective trial counsel

and the potential Double Jeopardy issue identified by the Second District Court of

Appeals. *Id.* at PageID#2219-21. In the alternative, Petitioner once again argues

that he may avoid any procedural default in this case because he is "actually

innocent" of the underlying crime. *See id.* at PageID##2221-23. Petitioner does

not provide any additional evidence to support this claim, but rather, states that

his case is analogous to that of *Sullivan v. Louisiana*, 508 U.S. 275 (1993), and

therefore, the Court can and should grant his Writ on this Ground. *See id.*[10]

Magistrate Judge Merz, in his Supplemental Report and Recommendations,

reaffirms his initial recommendation that Petitioner's claim is precluded due to his

---

[10] In *Sullivan v. Louisiana*, Petitioner challenged his conviction for first-degree murder on the grounds that the instructions given to the jury, regarding the definition of "reasonable doubt" were erroneous and previously held unconstitutional in *Cage v. Louisiana*, 498 U.S. 39. *Sullivan*, 508 U.S. at 276-77. The Supreme Court determined that conviction under the erroneous jury instruction would qualify as "structural error" and would require a new trial, pursuant to the Fifth and Sixth Amendments to the United States Constitution. *See id.* at 277-82. Petitioner, pursuant to his argument under Ground One, argues that his conviction was based on insufficient evidence to meet the reasonable doubt standard and, therefore, warrants habeas relief in this instance.

procedural default.  *See* Doc. #29, PageID##2230-31.  Magistrate Merz found that *Sullivan* was inapplicable in this situation because "*Sullivan* contains no discussion of 'actual innocence' and in fact was handed down two years before the actual innocence gateway exception to procedural default was recognized in *Schlup v. Delo*, 513 U.S. 298, 319 (1995)."  *Id.* at PageID#2331.  He noted that the actual innocence gateway, as articulated in *Schlup*, required "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Id.* (citing *Schlup*, 513 U.S. at 324).  He found that no further analysis of the merits of the claim was warranted.

Petitioner filed a second round of Objections, again raising the same claims. *Compare* Doc. #27, PageID##2219-22 *with* Doc. #34, PageID##2404-08 (arguing the concepts of notice, prejudice, and the actual innocence gateway with virtually identical language).  Petitioner also argued the issue on the merits, which he had previously done in his initial filings.  *Compare* Doc. #18, PageID##1994-2001 *with* Doc. #34, PageID##2408-19 (Petitioner's argument regarding the indictment's failure to provide notice and failure to shield Petitioner from Double Jeopardy concerns).

Petitioner has not provided any new arguments in his Objections to the Supplemental Report and Recommendations.  As stated previously, a petitioner's restatement of arguments does not constitute a proper objection.  The court therefore declines to review these arguments beyond Magistrate Merz's analysis.

*See, e.g., Roach*, 2016 U.S. Dist. LEXIS 11820 at *3; *Green*, 2010 U.S. Dist. LEXIS 47694 at *17-19.

For the reasons stated by the Magistrate Judge, the Court finds that Petitioner's Third Ground for Relief is procedurally defaulted. In the alternative, the Court finds that it fails on the merits. Again, for reasons already addressed by Magistrate Judge Merz, the Second District's treatment of this claim is not an unreasonable application of clearly established federal law.

As such, this Court ADOPTS Magistrate Merz's recommendation that, because Petitioner's Third Ground for Relief is barred by procedural default and, in the alternative, fails on the merits, it should be dismissed.

### D. Ground Four: Ineffective Assistance Claim for Failing to Challenge Indictment

In his Fourth Ground for Relief, Petitioner claims that he received ineffective assistance of counsel, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), when his trial counsel failed to challenge the sufficiency of the indictment.[11] *See*

---

[11] *Strickland* is the standard for ineffective assistance of counsel claims. Under *Strickland*, "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction of death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence results from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. 687.

Since the AEDPA applies to this claim, "[Petitioner] must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [Second District Court of Appeals] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. at 698-99 (2002); *see also Harrington v. Richter*, 562 U.S. 86, 101

Doc. #18, PageID##2001-09; Doc. #27, PageID##2223-31; Doc. #34, PageID##2419-32. Respondent defended this claim on the merits, arguing that the Second District's decision on this claim is entitled to deference under the AEDPA. *See* Doc. #6, PageID##1162-65. Magistrate Merz, in his initial Report and Recommendations and his Supplemental Report and Recommendations, recommended that Petitioner's claim be denied as meritless. *See* Doc. #22, PageID##2142-44; Doc. #29, PageID##2331-33. Petitioner contends, in his Objections to the Supplemental Report and Recommendations, that his case is analogous to that of *Bennett v. Warden, Lebanon Correctional Institution*, 782 F. Supp. 2d 466 (S.D. Ohio 2011) and, therefore, warrants habeas relief. *See* Doc. #34, PageID##2419-32. The Court disagrees.

In *Bennett*, the petitioner, in two separate cases, was charged with ten counts of sexual battery and fifty-two counts of rape. *Bennett*, 782 F. Supp. 2d at 471-72.[12] The challenged conduct, involving sexual abuse of a minor, took place over several years and multiple locations. *See id.* at 473 (detailing when petitioner began living with victim's mother and the various moves by the family during that time frame). The charges included in the indictment were "arbitrarily picked." Additionally, the victim in *Bennett* was a minor at the time of the

(2011) ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.").

[12] The petitioner in *Bennett* was charged with "ten counts of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(5) and fifty counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b)" in Case No. 2003-2143 and "two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2)" in Case No. 2204-2008. *Bennett*, 782 F. Supp. 2d at 471-72.

conduct. *Id.* (noting that the victim was approximately eight years old when the alleged abuse began).

Relying on *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), the Sixth Circuit held that petitioner's counsel provided unreasonable assistance in failing to object to the sixty-two charges in the indictment. *See Bennett*, 782 F. Supp. 2d at 497. As part of the analysis, the Sixth Circuit determined that counsel's failure to object was a "choice of trial strategy [that] fell outside the wide range of reasonable professional assistance under the first prong of *Strickland*." *Id*. The Sixth Circuit also concluded that "trial counsel's error amounted to ineffective assistance prejudicially affecting the outcome of the trial under the second prong of the *Strickland* test" because several of the counts were based on "identically-worded" counts and could not be differentiated at trial. *Id.*

Petitioner's case here is distinguishable from *Bennett* because Petitioner is not challenging an indictment that spans an extensive amount of time or an ongoing pattern of conduct.  Petitioner was charged with three counts of rape regarding his interactions with Molly Weckesser. Doc. #1, PageID#4.  This conduct took place over less than a twenty-four period. *See* Doc. #1, PageID##5-15. Additionally, Molly Weckesser was not a child when the conduct occurred. *See id.*; *see also State v. Hartman*, 2016-Ohio-2883 at ¶ 30 (noting that Weckesser was twenty years old at the time of the interaction).  With those distinctions in mind, this Court is unpersuaded that *Bennett* is analogous and would warrant relief.

Additionally, the rest of Petitioner's arguments, in this Court's opinions, are simply reiterations of Petitioner's original arguments that were addressed by Magistrate Merz. *Compare* Doc. #18, PageID##2001-09; Doc. #27, PageID##2223-31; and Doc. #34, PageID##2419-32. As such, this Court declines to elaborate beyond Magistrate Merz's reasoned analysis. *See, e.g.*, *Roach*, 2016 U.S. Dist. LEXIS 11820 at *3; *Green*, 2010 U.S. Dist. LEXIS 47694 at *17-19. The Court ADOPTS Magistrate Merz's recommendation that Ground Four of Petitioner's Petition should be denied on the merits.

### E. Ground Five: Ineffective Assistance Claim for Failing to Request a Bill of Particulars

In his Fifth Ground for Relief, Petitioner claims that he was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel, pursuant to *Strickland*, when his trial counsel failed to request a bill of particulars. *See* Doc. #18, PageID##2009-15; Doc. #27, PageID##2231-43; Doc. #34, PageID##2432-40. Respondent defended this ground on the merits, arguing that the decision of the Second District is entitled to AEDPA deference. Doc. #6, PageID#1164. Magistrate Merz recommended in his Report and Recommendations that this claim be dismissed. Doc. #22, PageID##2142-44. He reiterated this recommendation in his Supplemental Report and Recommendations. Doc. #29, PageID##2334-35. Petitioner raises several contentions in his Objections to the Supplemental Report and Recommendations. *See* Doc. #34, PageID##2432-40.

   1) <u>Petitioner's Objection that the Second District "Never Addressed"</u>
<u>the First Prong of *Strickland* and that Magistrate Merz Never</u>
<u>Discussed That Issue is Without Merit.</u>

In his Objections to the Supplemental Report, Petitioner first contends that

the Second District "never addressed" the first prong of *Strickland* and that

Magistrate Merz "made nothing of the court's silence on the deficient

performance prong."[13]  Doc. #34, PageID#2432.  The Court disagrees.  The

Supreme Court has stated that, under the first prong of *Strickland:*

> Judicial scrutiny of counsel's performance must be highly deferential
> . . . A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct falls
> within a wide range of reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be considered sound
> trial strategy."

*Strickland*, 466 U.S. at 689.

Further, when arguing this claim on the merits, Petitioner must go beyond

the *Strickland* analysis and satisfy the deference required by the AEDPA.  Under

28 U.S.C. § 2254(d)(1), Petitioner must show that the Second District Court of

---

[13] Although the Court notes that this is a new argument by Petitioner in his Objections to the
Supplemental Report and Recommendations, the Court takes note that Petitioner took the opposite
position in his initial Reply.  *Compare* Doc. #34, PageID#2432 ("The Court of Appeals never
addressed the deficient performance prong of *Strickland* in deciding the issue on direct appeal.")
*with* Doc. #18, PageID#2011 ("It is clear that the Second District Court of Appeals found deficient
performance in counsel's failure to move for a bill of particulars, thus satisfying the first prong of
*Strickland*.").  Further, Petitioner appears to have raised this contention only after Magistrate Merz
disagreed with his blanket assertion that the Second District found deficient performance under
Ground Five.  Doc. #22, PageID#2143 ("The Magistrate Judge declines to infer such a 'clear' finding
from silence.").

Appeals applied *Strickland* to these facts in an "objectively unreasonable manner." *See Bell v. Cone*, 535 U.S. at 698-699; *see also Harrington*, 562 U.S. at 105 ("When § 2254(d)(1) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."). Petitioner admits in his initial Objections that he has not found any direct authority to support the proposition that a failure to request a bill of particulars would constitute *per se* ineffective assistance of counsel under *Strickland*. *See* Doc. #27, PageID#2235.

Under the analysis outlined in *Strickland, Bell, and Harrington*, the Court believes that Petitioner has not established that counsel's failure to request a bill of particulars equates to ineffective assistance of counsel in this case. As stated in Ground Three, the challenged conduct in this case took place over a twenty-four-hour period. *See* Doc. #1, PageID##5-15. The conduct only involved two persons: Petitioner and Weckesser. *See State v. Hartman*, 2016-Ohio-2883 at ¶ 30. Additionally, both Petitioner and Weckesser were adults at the time the conduct took place. *See id.* (noting the age of the parties involved).

Moreover, it is evident that Petitioner was aware of the conduct at issue in this case. *See State v. Hartman*, 2016-Ohio-2883 at ¶ 47 ("In his written statement, and in his trial testimony, Hartman admitted in engaging in a sexual encounter . . . with [Weckesser]"); *see also* Doc. #34, PageID#2434 ("Petitioner knew that he had engaged in fellatio . . ."); *see also* Doc. #7-1, PageID#1851 (Petitioner testifying "I was sliding my middle finger in and out of her vagina."); Doc. #7-1, PageID#1585

(Petitioner testifying "I asked her if she wanted to go to doggy style, and at that point she said yes . . . [a]nd at that point is when she reached back through her legs and grabbed my penis and put my penis in her vagina for me."). Based on this information, this Court believes that trial counsel could have reasonably believed that a bill of particulars was not needed since Petitioner, and therefore trial counsel, were aware of the challenged conduct.

Even if Petitioner could establish deficient performance under *Strickland*, and the Court is not conceding that Petitioner has, the Court agrees with Magistrate Merz that "the Second District's conclusion that Hartman was not prejudiced by [trial counsel's decision to forgo a bill of particulars] appears quite reasonable." Doc. #22, PageID#2144. Throughout the trial, Petitioner did not deny that the sexual encounter between himself and Weckesser occurred. *See State v. Hartman*, 2016-Ohio-2883 at ¶ 47 ("In his written statement, and in his trial testimony, Hartman admitted in engaging in a sexual encounter . . . with [Weckesser]"). Petitioner argued only that the encounter was consensual in nature. *Id.* at ¶ 46 ("Through the trial, it is apparent that the defense strategy was to prove that the victim consented to the sexual conduct, and that Hartman did not purposefully force her to submit to the sexual conduct.").

To summarize, the Second District stated that:

To establish that [Petitioner] was prejudiced, Hartman would need to establish that but for counsel's failure to move for a bill of particulars, there is a reasonable probability that the outcome of the proceeding would have been different. As discussed above, the guilty verdicts in this case resulted from the trier of fact's decision to find the victim's

> testimony to be more credible.  Under these circumstances, we
> conclude that the details provided by a bill of particulars would not
> have resulted in a reasonable probability of a different outcome.

*Hartman*, 2016-Ohio-2883 at ¶ 47.  Although Petitioner attempts to argue several

ways in which the outcome of the trial may have been different, he has not

convinced the Court that the Second District's analysis, in applying *Strickland* to

these facts and determining that Petitioner did not suffer prejudice in this

instance, was objectively unreasonable under the AEDPA.

      2) <u>Petitioner's Remaining Arguments Are Reiterations of Previous</u>
         <u>Arguments and Will Not Be Addressed Further by this Court.</u>

Petitioner also argues that counsel's failure to request the bill of particulars

was unreasonable because it did not allow Petitioner to learn "of the conduct of

the defendant alleged to constitute [each] offense."  Doc. #34, PageID#2434 (citing

Ohio Rule of Criminal Procedure Rule 7(E)).  Petitioner then explains his position

by expounding upon the differences regarding the conduct involved in each of the

underlying convictions. *See id.* at PageID##2434-35.

Like many of Petitioner's Objections, this Court feels that these are not

proper objections, but, rather, are simply reiterations of arguments that

Magistrate Merz previously examined in his Report and Recommendations. *See,*

*e.g.*, *Roach*, 2016 U.S. Dist. LEXIS 11820 at *3; *Green*, 2010 U.S. Dist. LEXIS 47694

at *17-19.  Therefore, this Court will not elaborate beyond Magistrate Merz's

analysis and, as such, ADOPTS Magistrate Merz's recommendation that Ground

Five should be denied on the merits.  Doc. #22, PageID#2144; Doc. #29,

PageID##2334-35.

**F.  Ground Six:  Ineffective Assistance Claim Regarding the Cross-Examinations of the Victim, the Victim's Best Friend, and the Lead Investigator and Unreasonable Trial Strategy**

In his Sixth Ground for Relief, Petitioner contends that he received

ineffective assistance of counsel, pursuant to *Strickland v. Washington*, when his

trial counsel "introduced on cross-examination testimony establishing the

element of force" and "bolster[ed] the State's case against Hartman with

inadmissible hearsay."  Doc. #1, PageID#32.  Respondent, in its Return, argued

this claim on the merits and stated that the decision of the Second District Court of

Appeals was entitled to AEDPA deference.  Doc. #6, PageID#1166.  In his Reply,

Petitioner asserts that "[d]efense counsel failed in their duty to prepare and make

reasonable decisions concerning whether and how to cross-examine witnesses."

Doc. #18, PageID#2018.  Specifically, Petitioner cites the cross-examinations of

several witnesses to support his contention that trial counsel aided the State in

proving the element of force for his underlying convictions.  *See* Doc. #18,

PageID##2020-28.

In his initial Report and Recommendations, Magistrate Merz recommended

that Petitioner's claim be dismissed on the merits.  Doc. #22, PageID#2149.  After

reviewing the Second District decision on the issue, Magistrate Merz summarized

his recommendation on Ground Six, stating that:

[I]t was Hartman's trial strategy to undermine Weckesser's claim she was forced to have sex with him.  To that end, it was not an unreasonable strategy to attempt to elicit potentially inconsistent statements Weckesser might have made shortly after the incident, to a friend, to the nurse, or to the detective.

Doc. #22, PageID#2147.

Petitioner then filed his initial Objections, stating that trial counsel's strategy of attempting to undermine Weckesser's testimony by eliciting potentially inconsistent statements was unreasonable, because "[t]here were no prior inconsistent statements with which to impeach, only reinforcement of the State's position." Doc. #27, PageID#2249.  Petitioner again provided several sections of cross-examination testimony to support his contention. *See, e.g., id.* at PageID## 2249-50. Petitioner also reiterated his claim that "inadmissible hearsay and bolstering testimony was elicited by defense counsel from the alleged victim's best friend . . ." *Id.* at PageID#2252.

In his Supplemental Report and Recommendations, Magistrate Merz separates his discourse into two separate sub-issues:  the "Lack of a Trial Strategy" by trial counsel and the "Ineffective Assistance in Cross-Examination of Witnesses Weckesser, Potter[] and Norris." Doc. #29, PageID##2235, 2237. Magistrate Merz reaffirms his conclusion regarding the first sub-issue, stating that the affidavit of Petitioner's mother "cannot overcome the Second District's finding that there was a strategy." Doc. #29, PageID#2336.

Magistrate Merz, however, changed his opinion on the second sub-issue, ineffective assistance in cross-examination of some of the witnesses:

Petitioner has now persuaded the Magistrate Judge that his recommendation on this claim was in error.  It would of course have been very useful to the defense case if counsel could have shaken Ms. Weckesser's account or created a perception through cross-examination that she was equivocating.  But trial counsel apparently had no lever from prior statements she had made which would enable him to shake her account of the events.  Under those circumstances, the cross-examination allowed her to reinforce her direct testimony and, as the Second District found, to add to its facts not elicited by the prosecutor, facts supplied in the predicates of counsel's questions.

***

The Magistrate Judge also agrees with Petitioner that it was ineffective assistance of trial counsel for trial counsel to elicit from witnesses Potter and Norris hearsay statements of Weckesser that bolstered the State's case regarding the use of force.  There is even less arguable tactical justification for eliciting a victim's prior statements consistent with her trial testimony than there is for trying to shake the victim's story by vigorous cross.

Doc. #29, PageID##2338-39.

Petitioner filed his Objections to the Supplemental Report and Recommendations, reiterating his contention against the Magistrate's conclusions regarding Sub-Issue One.  Doc. #34, PageID##2441-49.  Respondent also filed its Objections to the Supplemental Report and Recommendations, Doc. #35, asking this Court to dismiss Magistrate Merz's findings with respect to Sub-Issue Two and, instead, to adopt the findings and conclusions in his initial filing.  Both parties also filed Responses in support of their respective positions. *See* Docs. #40, 41.

1) **Sub-Issue One:  Unreasonable Trial Strategy**

The Court concurs with Magistrate Merz's recommendation that this Sub-Issue should be denied on the merits.  In its decision on direct appeal, the Second District decided this issue as follows:

> [*P48] We agree with Hartman's assertion that defense counsel, on cross-examination of the victim, brought up factual matters not presented during the direct examination of the victim that may have helped the State prove the element of force.  Specifically, the record reveals that defense counsel asked the victim to confirm that Hartman was "restraining" her, Trial Transcript at 74-75, that Hartman pinned her arms down, Trial Transcript at 75-76, that Hartman held his forearm across her chest, Hartman grabbed her wrists, grabbed her arm, and "was doing that forcefully," Trial Transcript at 80-81.  We have held that "trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2007-Ohio-137, P 55.  "A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy." *State v. Conley*, 2015-Ohio-2553, P 56, 43 N.E.3d 773 (2d Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128 (1985).  "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy has been available." *Id.*, citing *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).  Because it was at least arguable that the State had presented sufficient evidence of force relating to at least one of the Rape counts—the last one occurring on the bed—trial counsel could reasonably have concluded that it would not be safe to eschew cross-examination on the element of force.

> [*P49] It appears that the strategy of defense counsel asking the victim about facts relevant to the issue of force was an attempt to attack her credibility based on different versions of the events she provided to the sexual assault nurse, to the detective, and during direct examination at trial.  In a case that rests entirely on the credibility of witnesses, a strategic choice to conduct cross-examination of the victim on factual issues relating to elements of the offense is not automatically ineffective assistance of counsel.  In the case before us, it was a valid defense strategy to attack the credibility

> of the victim through the use of prior inconsistent statements, a well-
> established trial strategy. *See* Evid. R. 613. We conclude that
> Hartman was not denied the effective assistance of counsel when
> reasonable trial strategy was utilized to challenge the victim's
> credibility through a cross-examination technique of raising
> inconsistent statements.

*Hartman*, 2016-Ohio-2883 at ¶ 48-49. In a case that centered upon the credibility of

both Petitioner and Weckesser, it would be considered reasonable strategy to

attempt to discredit Weckesser's testimony and credibility. Petitioner somewhat

concurs in this strategy as well, listing several ways that trial counsel could have

cross-examined Weckesser to discredit her testimony. *See, e.g.*, Doc. #27,

PageID#2248 ("Cross examine the alleged victim on the amount of alcohol she

consumed, the fact that she returned to the house with the intent to stay over . . .

there was plenty to cross examine the victim about.").

Furthermore, Petitioner's attempt to argue this contention is largely based

upon the affidavit of Beth Horvath, Petitioner's mother. *See* Doc. #27,

PageID#2245-46 (citing Doc. #5-2, PageID#633-44). Beyond this affidavit,

Petitioner does not cite to any testimony of himself or his trial counsel to support

this claim. As such, the Court concurs with Magistrate Merz's conclusion that

"Ms. Horvath's hindsight Affidavit cannot overcome the Second District's finding

that there was a strategy." Doc. #29, PageID#2336. Therefore, the Court will

ADOPT Magistrate Merz's conclusion that relief should be denied on his Sub-

Issue. *Id.* at PageID#2340.

2) Sub-Issue Two:  Cross-Examination of Weckesser, Potter and
   Detective Norris

In Sub-Issue Two, Petitioner focuses specifically on the form of the

questions used during the cross-examinations of Weckesser, Potter and Norris.

*See* Doc. #27, PageID##2247-60.  He also challenges the fact that counsel sought

and received inadmissible hearsay that bolstered the State's case regarding the

alleged use of force.

Magistrate Judge Merz, in his Supplemental Report and Recommendations,

found that, because trial counsel had "no lever from prior statements [the victim]

had made which would enable him to shake her account of the events," counsel's

cross-examination of the victim and other witnesses, in which the predicate of the

questions supplied new evidence supporting the prosecution's case, fell below an

objective standard of reasonableness.  Doc. #29, PageID#2338.  He also found that

such testimony was "certainly harmful to Petitioner's case," satisfying the

prejudice prong of *Strickland*.  He concluded that the Second District erred in

deferring to trial counsel's alleged "tactic," where such tactic was not reasonable

under the circumstances.  *Id.* at PageID#2339.  Magistrate Judge Merz further

found that it was ineffective assistance of counsel to elicit hearsay statements

from Potter and Norris regarding what Weckesser told them about the alleged use

of force.  *Id.*

In the Objections to the Supplemental Report and Recommendations, Doc.

#34, Respondent argues that Magistrate Judge Merz misapplied *Strickland*.

Respondent argues that the question is not whether certain evidence elicited by defense counsel on cross-examination, in hindsight, proved to be "harmful" to his client's case.  Rather, Petitioner must show that counsel's performance was objectively unreasonable, and that it prejudiced the defense to such an extent that it rendered the result of the trial unreliable or fundamentally unfair.  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Respondent maintains that the Second District reasonably rejected Petitioner's claim of ineffective assistance of counsel in holding that it was a reasonable trial strategy to attack the victim's credibility through the use of prior inconsistent statements, and in holding that the hearsay statements elicited by defense counsel were not sufficiently prejudicial to have affected the outcome of the trial.  Respondent maintains that even though counsel's trial strategy was ultimately unsuccessful, it was not constitutionally ineffective.

The Court overrules Respondent's Objections to this portion of the Supplemental Report and Recommendations, Doc. #35.  Although judicial scrutiny of counsel's performance is highly deferential, *Strickland*, 466 U.S. at 688, courts have often found cross-examination to be constitutionally deficient.  *See, e.g., Ward v. United States*, 995 F.2d 1317, 1318-19 (6th Cir. 1993) (defense counsel opened door to inadmissible character evidence); *Gebaree v. Steele*, 792 F.3d 991, 999-1000 (8th Cir. 2015) (defense counsel elicited statements that bolstered state's case); *Dillon v. Weber*, 737 N.W.2d 420, 428 (S.D. 2007) (defense counsel elicited

damaging testimony on nature of alleged sexual conduct and testimony concerning the truthfulness of the victim).

As Petitioner notes, counsel asked leading questions of Weckesser, Potter and Norris in which the predicate information, if accepted by the witness, supplied evidence concerning the use of force -- in this case, evidence that was not established by the prosecution on direct examination. The Second District specifically found this to be the case. "We agree with Hartman's assertion that defense counsel, on cross-examination of the victim, brought up factual matters not presented during the direct examination of the victim that may have helped the State prove the element of force." *Hartman*, 2016-Ohio-2883, at ¶ 48.

Trial counsel's cross-examination of Weckesser, on the issue of force, was extensive:

> Q: You said you're trying to get away from him?
> A: Yeah. That's why I really wasn't paying attention if he was using two hands or one.
> Q: But you were resisting?
> A: Yes
> Q: Or you didn't want him to do it?
> A: Yes
> Q: And he was restraining you in some way; is that right?
> A: Yes. He was just on top of me so it was hard for me to move.
> Q: But when he was on top, you managed to get up in an effort to try and get away?
> A: Yeah, I tried, but then he kept me there.
> Q: Then he got you back down?
> A: Yes.

Doc. #7-1, PageID##1262-63. Trial counsel also gave Weckesser the opportunity to confirm several statements she made to Detective Norris:

Q:  Now, you indicated in your statement to, I believe, Detective
Norris that he had your arms pinned down?
A:  He did when he was kissing me.  And when I tried to escape, he
pinned my arms down.
Q:  And you also said at one point to Detective Norris that when Mark
was trying to get your shirt off, that he had his forearm across your
chest and neck; do you recall that?
A:  Yeah

*Id.* at PageID##1263-64.

Trial counsel also extensively questioned Weckesser to confirm a

statement, regarding the element of force, that she made to the sexual assault

nurse examiner:

Q:  And do you recall telling the nurse that you were being held
against your will and your wrists were being held down?
A:  By Mark?
Q:  Yes.
A:  Yes, I told her that he was holding me down.
Q:  And by your wrists, specifically?
A:  I don't remember specifically, but he held me down by my arms.
Q:  Well, I want to just focus on the wrists.
A:  Okay.
Q:  Grabbed your wrists.  You recall that he held you down?
A:  Well, he had grabbed my wrists a few times when I tried to leave
from the situation, and he'd grab my wrist – like my arm around my
wrist area to pull me into the shower.
Q:  And –
A:  But when he held me down, it was mainly by my arms each time
he held me down.
Q:  When you say your arms though, you're pointing to your
shoulders.
A:  Well, arms, shoulder.  I mean, it was here.  It was on my arms.
Q:  Okay, so above your elbow and below your shoulder?
A:  Yeah.  I mean, a few times he was below my elbow.  It's just
whatever he could grab on my arm.
Q:  And he was doing that forcefully so that you couldn't move?
A:  Yes.

*Id.* at PageID##1268-69.

48

This line of questioning did not attempt to impeach Weckesser with any inconsistent statements but, rather, bolstered her credibility and supported the State's case by supplying several examples of "force" used by Petitioner.  Even giving counsel's conduct the "highly deferential" treatment required, the Court finds that, in this case, counsel's conduct falls outside the range of "reasonable professional assistance," thereby satisfying the first prong of *Strickland*.

Moreover, trial counsel elicited hearsay statements from Courtney Potter and Detective Steve Norris that also support the State's case.  For instance, the following colloquy occurred between trial counsel and Potter, Weckesser's friend, during the trial:

> Q:  Did she say that she had been forced to have sex?
> A:  Yes.
> Q:  And, in fact, Molly also said that she realized she had been drunk; isn't that right?
> A:  I don't believe so.
> Q:  She didn't say that?
> A:  I don't believe so.
> Q:  Okay.  But she did say to you that she had said no?
> A:  Yes
> Q:  And you believed her?
> A:  Yes.
> Q:  Because you're her friend?
> A:  Yes.
> Q:  And you're close to her?
> A:  Yes.
> Q:  And that's what good friends do?
> A:  Yes.
> Q:  They're supportive to one another?
> A:  Yes.
> Q:  And you also have this background of being a sexual assault counselor –
> A:  Yes.

Q: -- that's right? And in doing that you know it's important to be supportive?
A: Yes.
Q: -- right? No matter what you're hearing from that --
A: Yes
Q: --person right? And when you're in your bedroom and Molly is telling you about what happened the night before, she was more upset than she was when you first woke her up; is that right?
A: Yes
Q: And she was more upset than when you tried to wake her up the second time; is that right?
A: Yes.
Q: Was she more upset even than when she said let's go?
A: Yes.

Doc. #7-1, PageID##1343-45.

Hearsay statements were also elicited during the cross-examination of

Detective Norris. At trial, the following colloquy occurred:

Q: And based upon what Molly has told you is that she didn't want to take the shower and so Mark had to force her into the shower --
A: Yes
Q: -- and get her over that tub and get in there for the shower to take place --
A: Yes.
Q: -- is that right?
A: Yes.
Q: And she didn't have any marks or bruising on her knees or shins or legs or any --
A: No, sir.
Q: -- from that activity?
A: No, sir.
Q: Now, while you were at the hospital, did you hear Molly say that she was held down by her wrists against her will?
A: She said she was held down a number of different ways. I don't remember specifically if she said her wrists. I know she said he had his forearm or pushed her down by the throat.

Doc. #7-1, PageID#1492. Magistrate Judge Merz properly concluded that there

was "even less arguable tactical justification" for eliciting such hearsay

statements from Potter and Norris.  Again, these statements "bolstered the State's case regarding the use of force."  Doc. #29, PageID#2339.

In the Court's view, counsel's conduct falls outside the "wide range of reasonable professional assistance."  *Strickland,* 466 U.S. at 689.  The Court also agrees with Magistrate Merz's conclusion that the testimony elicited from Weckesser on cross-examination satisfies the prejudice prong of *Strickland* as well.  Doc. #29, PageID#2339.

Respondent argues that Magistrate Judge Merz misapplied *Strickland* in focusing on whether counsel's actions were merely "harmful" to Petitioner's case. Doc. #29, PageID#2339.  Quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), Respondent notes that the prejudice prong "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."

Although the Magistrate Judge's use of the word "harmful" in the Supplemental Report and Recommendations may not have been as precise as it could have been, there is no question that he understands what is required to establish the second prong of *Strickland.*  In his initial Report and Recommendations, he explained that "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable."  *See, e.g.,* Doc. #22, PageID#2140 (quoting *Strickland*, 466 U.S. at 687).

In the Court's view, a criminal trial is fundamentally unfair when defense counsel's cross-examination elicits facts not elicited by the prosecution on direct examination, when such facts are necessary for a conviction. Here, defense counsel elicited testimony that Petitioner forcibly restrained the victim by pinning her arms down, by placing his forearm across her chest and neck, and by grabbing her by the wrists. Accordingly, the Court agrees with Magistrate Judge Merz that Petitioner has established both deficient performance and prejudice. As such, the Court ADOPTS the recommendation of Magistrate Merz on this Sub-Issue and will grant a conditional writ of habeas corpus on this portion of Ground Six.

To summarize, the Second District properly found that it was reasonable trial strategy for defense counsel to attempt to challenge the victim's credibility through a cross-examination technique of raising inconsistent statements. Nevertheless, Petitioner was denied effective assistance of counsel when his attorney repeatedly elicited facts concerning the use of force that were not elicited by the prosecutor on direct examination. While attempting to impact the credibility of the victim was a wise trial strategy, there is no reasonable trial strategy to ask the questions asked designed to elicit the answers given.

### Ground Seven: *Crawford* Violation Regarding Mark Squibb Testimony

In his Seventh Ground for Relief, Petitioner argues that his Sixth Amendment rights, pursuant to the Confrontation Clause and the holding of *Crawford v. Washington*, 541 U.S. 36 (2004), were violated when the trial court

admitted the expert testimony of Mark Squibb ("Squibb") because Squibb did not complete the forensic analysis and DNA testing of the crime scene and rape kit evidence and, therefore, should not have been permitted to testify. Doc. #1, PageID##39-40; Doc. #18, PageID##2031-40.[14] Respondent contends in its Return that Ground Seven has been procedurally defaulted and cannot be considered by this Court because "Hartman failed to lodge any contemporaneous objection to this testimony during the trial proceedings." Doc. #6, PageID#1129; *see also* Ohio Evid. Rule 103(A)(1).[15]

Magistrate Merz, in his initial Report and Recommendations, recommended that Petitioner's claim under Ground Seven should be dismissed. Magistrate Merz agreed with Petitioner that there was a violation of the Confrontation Clause. Doc. #22, PageID#2154.[16] At the same time, Magistrate Merz also agreed with the

---

[14] The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.; *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."). The Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Statements are testimonial in nature "when the circumstances objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

[15] Ohio Evid. R. 103 states the following:
    (A) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
        (1) In case the ruling is one admitting evidence, timely objection or motion to strikes appears of record stating the specific ground of objection, if the specific ground was not apparent from the context.

[16] Magistrate Merz also noted that Respondent did not directly contest whether a Confrontation Clause violation occurred, only whether such a claim was procedurally defaulted. Doc. #22, PageID#2154. As part of its *de novo* review, this Court has also not discovered any such argument from Respondent.

Second District Court of Appeals' application of the plain error analysis due to Petitioner's failure to timely object to Squibb's testimony and the Second District's enforcement of Ohio's contemporaneous objection rule. *See id.* at PageID##2153-54 (citing several Sixth Circuit cases identifying Ohio's contemporaneous objection rule as an adequate and independent state ground of decision).

Next, Magistrate Merz determined that the Confrontation Clause violation did not equate to structural error, and furthermore, cited several Sixth Circuit cases that have expressly held that Confrontation Clause errors are subject to harmless error analysis under the factors outlined in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). Doc. #22, PageID#2156-57; *accord Reiner v. Woods*, 955 F.3d 549 (6th Cir. 2020); *Gover v. Perry*, 698 F.3d 295 (6th Cir. 2012). Lastly, Magistrate Merz concluded that the Second District analyzed the facts under the *Van Arsdall* factors and correctly determined that any Confrontation Clause error was harmless and did not have a "substantial and injurious effect or influence in determining the . . . verdict" as required by *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Doc. #22, PageID##2156-58.

In response, Petitioner filed his initial Objections, reiterating the same arguments raised in his initial Reply. *See* Doc. #27, PageID##2260-71. Additionally, Petitioner claimed that four of the five *Van Arsdall* factors weighed in his favor and supported a finding that the Confrontation Clause violation was not

harmless. Doc. #27, PageID##2266-71.[17]  Magistrate Merz, in his Supplemental

Report and Recommendations, continued to disagree with Petitioner.  *See* Doc.

#29, PageID#2343 ("Applying *Brecht*, the Magistrate Judge found the

Confrontation Clause error did not have a substantial and injurious effect in

determining Judge Tucker's verdict.").  Petitioner again raises similar arguments

in his Objections to the Supplemental Report and Recommendations.  Doc. #34,

PageID##2449-55.

> **1) Petitioner's Argument that the Confrontation Clause Violation
> Equates to Structural Error and Warrants Relief is Without Merit.**

Structural errors are a "'highly exceptional category' of fundamental

constitutional errors that are not subject to harmless error analysis 'because they

undermine the fairness of a criminal proceeding as a whole.'"  *United States v.*

*Smith*, Case No. 21-5432, 2021 U.S. App. LEXIS 35476, *5 (6th Cir. Nov. 29, 2021)

(quoting *United States v. Davila*, 569 U.S. 597, 611 (2013)).  These errors "'are so

intrinsically harmful' that they 'require automatic reversal' of conviction

regardless of whether they actually prejudiced the defendant or affected the

outcome of the proceeding.  *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 7

(1999)).

---

[17] Petitioner maintains that the following *Van Arsdall* factors weigh in his favor and support his claim that the Confrontation Clause violation at trial was not harmless: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (4) the extent of the cross-examination otherwise permitted and (5) the overall strength of the prosecution's case."  Doc. #27, PageID#2267.

The only *Van Arsdall* factor that Petitioner does not claim weighs in his favor is (3) the presence or absence of evidence of corroborating or contradictory testimony on critical points.

Additionally, as noted by Magistrate Merz in his initial Report and

Recommendations, the Sixth Circuit has listed the instances in which structural

errors have been found:

> The Supreme Court has "found structural error only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997). These structural errors include: total deprivation of the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335 (1963); lack of an impartial trial judge, *Turney v. Ohio*, 273 U.S. 510 (1927); unlawful exclusion of grand jurors of the defendant's race, *Vasquez v. Hillery*, 474 U.S. 254 (1986); denial of the right to self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168 (1984); denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39 (1984); and denial of the right to a jury verdict of guilty beyond a reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275 (1993). In *United States v. Chronic*, 466 U.S. 648, 659 and n.25 (1984), the Supreme Court added to the list the denial of counsel at a "critical stage" of the criminal proceedings, entitling the defendant to a new trial without a specific showing of prejudice because the error makes "the adversary process itself presumptively unreliable." *See also Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir.) (holding that a defendant is deprived of counsel at a critical stage, "a *per se* Sixth Amendment violation [results,] warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error."), *cert. denied*, 128 S.Ct. 708 (2007); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

*Hereford v. Warren*, 536 F.3d 523, 529 (6th Cir. 2008) (parallel citations omitted);

*see also* Doc. #22, PageID##2155-56 (quoting the same).

The Court agrees with Magistrate Merz that Petitioner has not established

that the Confrontation Clause violation equates to a structural error that warrants

reversal.  Case law in the Sixth Circuit is clear that Confrontation Clause violations

are subject to a harmless error analysis and do not warrant automatic reversal.

*See, e.g., Reiner v. Woods*, 955 F.3d at 555 ("Confrontation Clause violations do

not require automatic reversal, and are instead subject to harmless error analysis"); *Couturier v. Vasbinder*, 385 Fed. Appx. 509, 515 (6th Cir. 2010) ("When reviewing Confrontation Clause violations for harmless error, the reviewing court considers the factors laid out in *Van Arsdall* . . ."); *Vasquez v. Jones*, 496 F.3d at 574 ("Confrontation Clause errors are subject to harmless-error analysis."). Further, Petitioner has not cited to any Supreme Court precedent to support the premise that a Confrontation Clause violation is a structural error. As such, Petitioner's argument is not well taken.

> 2) The Confrontation Clause Error Did Not Have a Substantial and Injurious Effect on Petitioner.

Confrontation Clause violation claims are analyzed under the standard outlined in *Brecht v. Abrahmanson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112 (2007). Under the *Brecht* standard, "an error requires reversal only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 631 (quoting *Kotteakos v. United States*, 328 U.S. 750 (1946)). Furthermore, "If a judge is in grave doubt about whether or not the error is harmless, the uncertain judge should treat the error . . . as if it had a substantial and injurious effect or influence in determining the jury's verdict." *Gover*, 698 F.3d at 302 (quoting *Neal v. McAninch*, 513 U.S. 432 (1995)) (internal quotations omitted). "The Supreme Court and [the Sixth Circuit] have made clear that '*Brecht* is always the test' for evaluating harmless error on collateral review, even where AEDPA applies." *Reiner*, 955 F.3d at 556 (quoting *Ruelas v. Wolfenbarger*,

580 F.3d 403, 411-12 (6th Cir. 2009)); *accord Davenport v. MacLaren*, 964 F.3d 448, 455 (6th Cir. 2020).

"To determine whether a Confrontation Clause violation is harmless under *Brecht*, the Sixth Circuit uses the factors discussed in [*Van Arsdall*]." *Id.* (citing *Vasquez*, 496 F.3d at 575). These factors "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

The Court disagrees with Petitioner's contention that four of the five *Van Arsdall* factors favor his position and warrant relief under *Brecht*. Doc. #27, PageID##2267-72; Doc. #34, PageID##2449-55 (arguing that Petitioner can show prejudice, as used in the Second District Court of Appeals decision). The forensic evidence was not required to connect Petitioner to Weckesser because Petitioner openly admitted to such conduct. *See, e.g.*, Doc. #7-1, PageID#1851, 1585 (Petitioner testifying "I was sliding my middle finger in and out of her vagina." and "I asked her if she wanted to go to doggy style, and at that point she said yes . . . [a]nd at that point is when she reached back through her legs and grabbed my penis and put my penis in her vagina for me."). Additionally, Petitioner's counsel was able, on cross-examination, to elicit testimony from Squibb that both Weckesser and Petitioner had DNA sources at various spots on the comforter,

supporting the Petitioner's theory that the sexual encounter was consensual and involved various positions on the mattress. *See* Doc. #7-1, PageID##1431-39 (cross-examination of Squibb by trial counsel). This Court also notes, as Magistrate Merz did in his Supplemental Report and Recommendations, that this case did not turn on the DNA evidence, but rather, the credibility of Petitioner and Weckesser. *Hartman*, 2016-Ohio 2883 at ¶ 47; *see also* Doc. #29, PageID#2342.

Without more, Petitioner has not convinced the Court that this Confrontation Clause error, because it did not "[have] a substantial and injurious effect or influence in determining the jury's verdict, requires reversal." *Brecht*, 507 U.S. at 631. As such, the Court ADOPTS Magistrate Merz's recommendation and denies Ground Seven on its merits.

### G. Ground Eight: Ineffective Assistance Claim Regarding *Crawford* Violation

In his Eighth Ground for Relief, Petitioner contends he was denied the effective assistance of counsel at trial, pursuant to the Sixth Amendment and *Strickland*, when Petitioner's trial counsel failed to object to Squibb's testimony. Doc. #1, PageID##40-41; Doc. #18, PageID##2040-45. Respondent contends that Petitioner's claim should be dismissed as meritless because the appellate decisions are entitled to AEDPA deference. Doc. #6, PageID##1160-61. Magistrate Merz, in his Report and Recommendations, deferred to his analysis under Ground Seven and stated the decision of the Second District "was not an objectively

unreasonable application of *Strickland* and is entitled to AEDPA deference." Doc.
#22, PageID#2159.

In his initial Objections, Petitioner reiterates his initial arguments from
Grounds Seven and Eight, insisting that the Confrontation Clause violation
prejudiced his defense. *Compare* Doc. 27, PageID##2271-80 *with* Doc. #27,
PageID##2260-70. Magistrate Merz briefly addressed Petitioner's claim in his
Supplemental Report and Recommendations, restating his position that the
Confrontation Clause error was harmless and, as such, Petitioner was not
prejudiced by counsel's failure to object. Doc. #29, PageID#2343 (citing Doc. #22,
PageID#2159). Magistrate Merz concluded this section of his Supplemental
Report and Recommendations, stating that "Petitioner objects, but essentially
repeats his argument from the Seventh Ground for Relief. No further analysis is
necessary." *Id.* Petitioner objected again, renewing the same arguments for a
third time. *See* Doc. #34, PageID##2455-2461.

The Court agrees with Magistrate Merz's Supplemental Report and
Recommendations that "[n]o further analysis is necessary" on this claim.
Petitioner has repeatedly reiterated his arguments on this claim but has provided
no new objections for this Court to consider during its *de novo* review. As such,
the Court, as it has done previously with some of Petitioner's other arguments,
will decline to elaborate further than Magistrate Merz's reasoned analysis. *See,
e.g.*, *Roach*, 2016 U.S. Dist. LEXIS 11820 at *3; *Green*, 2010 U.S. Dist. LEXIS 47694
at *17-19.

Since Petitioner has not raised any new objections in his latest filing, he has not convinced this Court that Magistrate Merz erred in his analysis. Further, for the reasons outlined in Ground Seven, the Court reiterates its determination that any error in permitting Squibb's testimony was harmless and did not prejudice Petitioner. As such, the Court ADOPTS Magistrate Merz's recommendation that Petitioner's claim under Ground Eight should be denied on the merits.

### H. Ground Nine: Ineffective Assistance Claim for Failing to Secure Tape-Recorded Statements of Defendant

In his Ninth Ground for Relief, Petitioner claims that he was denied the effective assistance of trial counsel, in violation of the Sixth Amendment and the holding of *Strickland v. Washington*, when trial counsel failed to procure the tape-recorded statements that occurred during Petitioner's two interviews with the Oakwood Police Department. Doc. #1, PageID##41-52. Respondent states that this issue has been procedurally defaulted, under the doctrine of *res judicata*, because "Hartman abandoned these . . . claims before the Ohio Supreme Court on discretionary review." Doc. #6, PageID#1132.[18] Petitioner counters that this claim could not be raised on direct review by the Ohio Supreme Court because it relied,

---

[18] "The doctrine of res judicata is that an existing final judgment rendered on the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Schlangen v. Allied Pest Control, Inc.*, 2006-Ohio, 2334, ¶ 26 (2d Dist.) (quoting *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943)); *Cont'l Cas. Co. v. Indian Head Indus.*, 941 F.3d 828, 835 (6th Cir. 2019) ("Res judicata comes from the Latin meaning 'a thing adjudicated,' and it refers to situations in which an earlier judgment can bind a later proceeding on one or more issues. Res judicata in fact covers two different doctrines: claim preclusion and issue preclusion. Claim preclusion prevents parties from re-raising claims or defenses that were or could have been raised in the prior action.") (internal citations omitted).

in part, on evidence *dehors* the record, and therefore, *res judicata* does not apply. Doc. #18, PageID##2046-59.

Magistrate Merz, in his initial Report and Recommendations, agreed with Respondent that Petitioner failed to raise this claim on his direct appeal and, therefore, the claim was procedurally defaulted. Doc. #22, PageID#2163. Specifically, Magistrate Merz opined that Petitioner extensively relied on Ohio law, "so that his implicit argument is that the Second District decided this issue of state law incorrectly." *Id.* at PageID##2161. Magistrate Merz stated that, when evaluating habeas claims, the court "is generally bound by state court interpretations of state law." *Id.* (quoting *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008)).

Magistrate Merz also found that Petitioner's argument that he could not raise this claim on direct appeal due to evidence *dehors* the record was not well taken. The Second District Court of Appeals stated that this claim was barred by *res judicata* due to Petitioner's failure to raise it on direct appeal. *Id.* (quoting *State v. Hartman*, 2017-Ohio-7933, ¶ 45 (2d Dist.) ("Hartman II")). This decision functioned as an "adequate and independent" state ground under the *Maupin* factors and, therefore, required dismissal due to the procedural default. *Id.* at PageID##2161-62.

In his Objections, Petitioner shifts his focus, claiming that "[t]he *res judicata* finding is an unreasonable finding of fact in light of the evidence presented." Doc. #27, PageID#2280. Petitioner again claims that this issue could not be fully

litigated until the post-conviction phase due to the reliance of evidence *dehors* the record. *See id.* at PageID##2280-88. As such, Petitioner believes that the determination by the Second District, stating that Petitioner's claim is defaulted due to his failure to raise this issue during his direct appeal, is unreasonable in nature. *See id.*

Magistrate Merz, in his Supplemental Report and Recommendations, reiterated his position that Petitioner's claim should be dismissed due to his failure to raise the issue on direct appeal to the Ohio Supreme Court. *See* Doc. #29, PageID##2345-46 (noting that Petitioner raised this issue on direct appeal to the Second District Court of Appeals but failed to raise the issue to the Ohio Supreme Court). At the onset, Magistrate Merz explained that the purpose of objections, pursuant to Federal Rule of Civil Procedure 72(b)(3), was to provide the district court with a reasoned analysis as to why the Magistrate Judge was incorrect, not to raise new arguments. *See id.* at PageID#2345.

Further, Magistrate Merz explained how the issue, if it weren't procedurally defaulted, is still without merit for two reasons. First, "[the] determination of *res judicata* is a mixed question of law and fact. That is, an Ohio court must decide what facts were necessary to prove the ineffective assistance of trial counsel claim and whether those facts were available on the direct appeal record." *Id.* at PageID#2346. Second, "the fact that some additional evidence which could be used to prove the claim was presented for the first time in post-conviction does

not prove that there was insufficient evidence already in the record to decide the claim on direct appeal." *Id.*

In his Objections to the Supplemental Report and Recommendations, Petitioner reasserts his contention that this claim "could not have been raised on direct appeal, because in order to show the prejudice required to support Petitioner's ineffective assistance of counsel claim evidence *dehors* the record was necessary." Doc. #34, PageID#2462. Specifically, Petitioner once again points to testimony that Detective Norris told Petitioner and trial counsel that the stories of Petitioner and the victim "matched up until the shower," which was elicited during Petitioner's hearing on his Motion for a New Trial. *Id.* at PageID#2466 (quoting 2017-Ohio-7933 at ¶ 78). Petitioner's habeas counsel also noted that they were not counsel for Petitioner during the direct appeal and, therefore, did not personally raise the issue during the direct appeal. *Id.* at PageID#2465.

"[A]n exception to [the] res judicata rule exists if a defendant presents new competent, relevant and material evidence dehors, or outside, the record. Yet, the evidence dehors the record must not be evidence which was in existence and available for use at the time of trial and which could and should have been submitted at trial if the defendant wished to use it." *State v. Ginyard*, 2004-Ohio-1477, ¶12 (2d Dist.) (internal citations omitted). Additionally, "[w]hen the evidence a defendant relies upon is dehors the record, that evidence must meet a threshold of cogency. Cogent evidence is that which is more than marginally significant and

advances a claim beyond mere hypothesis and desire for further discovery." *State v. Goldwire*, 2005-Ohio-5784, ¶ 9 (2d Dist.) (internal citations omitted). "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that that he could not have appealed the claim based upon information contained in the original record." *Id.* at ¶ 11 (quoting *State v. Aldridge*, 120 Ohio App. 3d 122, 697 N.E.2d 228 (2d Dist.)).

After reviewing the record in this case, the Court agrees with Magistrate Merz, as well as the Second District Court of Appeals, that this claim is procedurally defaulted under the doctrine of *res judicata*. Petitioner's habeas counsel represented Petitioner on his direct appeal as well as his post-conviction proceedings. *See* Doc. #5-1, Ex. 12, PageID#205; *see also* Doc. #5-2, Ex. 20, PageID#572. Petitioner raised the issue of the missing audio tapes on direct appeal:

> When [trial counsel] did not receive discovery they expected, specifically tape recordings of Hartman's two sessions with Detective Norris, they did not follow-up and thus were surprised at trial when the recordings were not available . . . Because they failed to investigate the case, Hartman's lawyers could not meet or adequately test the State's evidence and Hartman was prejudiced thereby.

Doc. #5-1, Ex. 12, PageID#257 (Appellant's Brief on Appeal). In response, the Second District Court of Appeals, found that Petitioner could not establish the prejudice required to warrant relief under *Strickland*:

> We also conclude that Hartman has not shown prejudice by his counsel's failure to obtain a copy of the video recorded interrogations with the detective from the Oakwood Police Department. Defense counsel was present with Hartman at the time of the interviews,

which should have adequately prepared counsel for making strategic plans to cross-examine the detective, and to prepare Hartman for potential cross-examination during his trial testimony. Hartman has not established how discovery of the video recordings would have led to a different outcome at trial.

*Hartman*, 2016-Ohio-2883 at ¶ 57. Petitioner did not raise this claim on direct appeal to the Ohio Supreme Court. *See* Doc. #5-2, Ex. 17, PageID##409-26.

Based on this procedural background, it is clear to this Court why, during the post-conviction proceedings, the Second District Court of Appeals overruled Petitioner's arguments on the grounds of *res judicata. See Hartman*, 2017-Ohio-7933 at ¶ 42-45. Further, the Court agrees with Magistrate Merz that the doctrine of *res judicata*, when applied in criminal proceedings, is an "adequate and independent" state ground on which to render a decision herein, and, therefore, supports the recommendation that this claim is procedurally defaulted. *See, e.g., Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007). Moreover, while Petitioner may be able to show how this evidence *dehors* the record could be *helpful* in supporting his claim, Petitioner has not convinced this Court that such evidence was *necessary* to fully consider his claim in this instance. *See Goldwire*, 2005-Ohio-5784 at ¶ 9, 11.

As such, this Court ADOPTS Magistrate Merz's recommendation that this claim be dismissed due to procedural default. Doc. #22, PageID#2163; Doc. #29, PageID##2346-47.

## I. Ground Ten: Ineffective Assistance Claim for Failing to Secure Diagram of Comforter

In his Tenth Ground for Relief, Petitioner claims that he was denied the effective assistance of trial counsel, in violation of the Sixth Amendment and the holding of *Strickland v. Washington*, when trial counsel failed to procure the forensic diagram of the DNA stains on the comforter prior to trial. Doc. #1, PageID##52-57. Respondent claimed that this ground was precluded from consideration due to procedural default or, in the alternative, entitled to deference under the AEDPA. *See* Doc. #6, PageID##1130-36. Petitioner contends that his claim is not procedurally defaulted because it could not be fully considered absent evidence *dehors* the record. *See* Doc. #18, PageID##2060-68.

Magistrate Merz, in his initial Report and Recommendations, recommended that this claim be denied due to procedural default for failing to raise the issue on direct appeal. Doc. #22, PageID#2166. Petitioner, in his Traverse, largely cited evidence that was available during his direct appeal and, therefore, did not constitute evidence *dehors* the record. *Id.* at PageID#2165. Magistrate Merz instructed Petitioner to provide pinpoint cites in his Objections, should he choose to file them, to evidence that he contends was *dehors* the record, pursuant to S.D. Ohio Civ. 7.2(b)(5). *Id.* at PageID##2165-66. In conclusion, Magistrate Merz stated that:

> Petitioner has not shown that the Second District's determination that the evidence to support this claim was already in the record at the time of direct appeal was an unreasonable determination of the facts based on the evidenced [sic] of record. On that basis the Second

District's decision was an appropriate enforcement of Ohio's *res judicata* rule.

Doc. #22, PageID#2166.

In his initial Objections, Petitioner raised the same arguments as he previously raised in his Reply. *Compare* Doc. #27, PageID##2288-94 *with* Doc. # Doc. #18, PageID##2060-68. Petitioner also failed to pinpoint cite to any evidence, as directed by Magistrate Merz in his Report and Recommendations, that was attached to the post-conviction filings and, therefore, would have been *dehors* the record. *See generally* Doc. #27, PageID##2288-94. In response, Magistrate Merz reiterated his position, stating that "[h]aving reconsidered that recommendation in light of the Objections, the Magistrate Judge does not believe further analysis on this Ground for Relief is warranted." Doc. #29, PageID#2347.

Petitioner again, in his Objections to the Supplemental Report and Recommendations, insists that the evidence to fully consider the claim was not available on direct appeal and relies on evidence *dehors* the record. *See* Doc. #34, PageID##2472-80. This "objection" is largely a reiteration of the prior filings by Petitioner. *Compare id. with* Doc. #27, PageID##2288-94 *and* Doc. # Doc. #18, PageID##2060-68. Petitioner again failed to pinpoint any exhibits that were attached to the Petition for Post-Conviction Relief, in his Objections to the Supplemental Report and Recommendations, *see generally id.,* as instructed by Magistrate Merz in his initial Report and Recommendations.

This court agrees with Magistrate Merz that Petitioner's claim is precluded due to procedural default, since Petitioner could have raised this claim on direct appeal, failed to do so and, furthermore, failed to identify any evidence *dehors* the record to excuse the default. Petitioner, represented by current counsel, contended in his direct appeal to the Second District Court of Appeals that trial counsel was ineffective because counsel "failed to contact crime lab supervisor Mark Squibb or to ask about forensic examiner Emily Draper's notes from the testing." Doc. #5-1, PageID#257. Petitioner, again represented by current counsel, failed to bring this claim, on direct appeal, in his petition for discretionary review by the Ohio Supreme Court. Doc. #5-2, PageID##409-26.

Although current counsel has stressed that this claim was brought pursuant to the holding in *Brady v. Maryland*, 373 U.S. 83 (1963), the Court concurs with Magistrate Merz that current counsel's *Brady* argument on direct appeal "does not negate the Second District's conclusion that all the evidence on the claim presented by present counsel in post-conviction had already been made part of the record before direct appeal." Doc. #22, PageID#2165. Petitioner states in his initial Objections and his Objections to the Supplemental Report and Recommendations:

> At the time of Petitioner's direct appeal, the following evidence was in the record with regard to Petitioner's *Strickland* claim: 1) The lab report dated 7/15/14 from Emily Draper (State's exhibit 25); 2) Emily Draper's lab notes with diagram (Defendant's Exhibit F); and the Affidavit of Christopher Conard (ECF No. 5-1, Appendix, PAGE ID# 126-128) and its attachments, authenticated by the Affidavit.

Doc. #27, PageID#2289; *see also* Doc. #34, PageID#2473 (Petitioner using near

verbatim language to describe the same available evidence in his Objections to

the Supplemental Report and Recommendations).  Petitioner offers no additional

citations to evidence *dehors* the record, even after by directed to do so by

Magistrate Merz in his initial Report and Recommendations.  *See* Doc. #22

PageID##2165-66; Doc. #27, PageID##2288-94 (initial Objections with no pinpoint

citations to any of the exhibits referenced in Petitioner's post-conviction

proceeding); Doc. #34, PageID##2472-80 (Petitioner's Objections to the

Supplemental Report and Recommendations containing no pinpoint citations to

any of the exhibits referenced in Petitioner's post-conviction proceeding).

As such, the Court ADOPTS Magistrate Merz's recommendation that

Ground Ten should be dismissed as procedurally defaulted.  Doc. #22,

PageID#2166; Doc. #29, PageID#2347.

### J.  Ground Eleven:  Ineffective Assistance Claim for Delivering Petitioner's Written Statement to Detective Norris Without Client Waiver of Privilege

In his Eleventh Ground for Relief, Petitioner claims that he was denied the

effective assistance of counsel, in violation of the Sixth Amendment and the

holding of *Strickland v. Washington*, when trial counsel, absent a knowing,

intelligent, and voluntary waiver of the attorney-client privilege by Petitioner,

delivered Petitioner's written statement to the lead detective.  Doc. #1,

PageID##57-63.  This issue, on direct appeal and during the post-conviction

proceedings, was discussed on two distinct sub-issues: (1) whether trial counsel

Conard rendered ineffective counsel when he gave Petitioner's statement to

Detective Norris; and (2) whether trial counsel Conard rendered ineffective

counsel when he "concocted" the statement Petitioner signed by using a

statement of a prior client as a "template." *E.g.*, Doc. #5-3, Ex. 25, PageID##805-07

(Decision, Entry and Order Granting Respondent State of Ohio's Motion for

Summary Judgment). As such, the Court will analyze each sub-claim separately.

> 1) Ineffective Assistance of Counsel by Giving Statement to Police

Respondent, in its Return, stated that this issue was procedurally defaulted

due to Petitioner's failure to raise it on appeal to the Ohio Supreme Court. Doc.

#6, PageID##1130, 1132, 1170. Petitioner, in his Traverse, argues that his claim is

not defaulted because evidence *dehors* the record exists to fully litigate the claim.

Doc. #18, PageID##2068-76. Specifically, Petitioner argues that "[t]he trial court

found that *res judicata* did not bar a portion of the issue . . . thus admitting that

Hartman could not 'fully litigate' this claim, thereby denying use of *res judicata* to

bar this court's merit's review." Doc. #18, PageID#2076. (citations omitted).

In his initial Report and Recommendations, Magistrate Merz, after analyzing

the decisions of the trial court and the Second District Court of Appeals, concurred

with Respondent, that this part of Petitioner's claim under Ground Eleven was

procedurally defaulted and, therefore, precluded review by this court. Doc. #22,

PageID#2171. Petitioner, in his Objections to the Report and Recommendations,

largely reiterated the same arguments, renewing his argument that the claim was

not procedurally defaulted and, furthermore, that the claim was not meritless.

*See* Doc. #27, PageID##2294-2303. Magistrate Merz reasserted his position in his

Supplemental Report and Recommendations, deferring any analysis to his

original Report and Recommendations. Doc. #29, PageID##2347-48. Petitioner

echoed his original arguments again in his Objections to the Supplemental Report

and Recommendations. Doc. #34, PageID##2480-89.

At the onset, the Court notes that Petitioner argued this claim on direct

appeal to the Second District Court of Appeals, but failed to raise it in his petition

to the Ohio Supreme Court. Doc. #5-1, Ex. 12, PageID##243-44 (Petitioner's Brief

on Appeal to the Second District Court of Appeals); *See also Hartman*, 2016-Ohio-

2883 at ¶ 46 (Second District Court of Appeals determination on this claim); Doc.

#5-2, Ex. 17, PageID##409-26 (Petitioner's Memorandum in Support of Jurisdiction

to the Ohio Supreme Court). Therefore, Petitioner did not finish "one complete

round of [Ohio's] established appellate review process." *Caver v. Straub*, 349 F.

340, 346 (6th Cir. 2003).

The trial court considered the same claim during Petitioner's review for

post-conviction relief, largely relying on the quoted language from the Second

District Court of Appeals opinion. *See* Doc. #5-3, Ex. 25, PageID##805-06 ("This

determination, as indicated, precludes further consideration of Mr. Conard's

decision to provide Mark Hartman's statement to Detective Norris."). The Second

District again barred this claim, stating that "[the Second District Court of

Appeals] agree[s] with the trial court that much of what Hartman raises in his third

ground for relief is barred by res judicata, because these arguments were raised or could have been raised in his direct appeal." *Hartman*, 2017-Ohio-7933 at ¶ 40.

This Court agrees believes that the application of the doctrine of *res judicata*, due to Petitioner's failure to raise this claim on direct appeal to the Ohio Supreme Court, was reasonable in nature and, therefore, Petitioner's claim is procedurally defaulted and precluded from review here. Petitioner argued this claim, on direct appeal, to the Second District Court of Appeals, stating in part that:

> The times when it is effective practice to advise a client who is a suspect in a criminal case to give a written and oral statement to law enforcement officers are few and far between – usually when there is [a] deal on the table, in writing, and the prosecutor has already signed off on it. To reach that point, counsel must already have investigated the case and know the charges at issue. That did not happen here. Counsel Conard had not had the opportunity to investigate the case. Hartman's written statement was given to Norris on January 2, 2014, only two days after the incidents at issue had occurred. Conard knew only generally what the charges might be. He could not effectively advise Hartman at that time. Moreover, Conard arranged for Hartman to talk to Norris and acted as the coordinator to set up the police interview, calling Norris and scheduling the January 2, 2013 date. Tr. 295. There was no reasonably foreseeable benefit to Hartman in following this course of action.
>
> Hartman was prejudiced by his lawyer's instruction to provide a written statement to Detective Norris and submit to two rounds of questioning. Tr. 263, 279, 411-12, 413. Hartman's statement admitted some elements of the crimes alleged, specifically that sexual conduct occurred, and were used against Hartman at trial. Detective Norris read Hartman's statement into the record, Tr. 266-73, and repeated Hartman's answers to questions from both rounds of questioning. Tr. 273-78, 279-83. The State also used the written statement to repeated[ly] attack Hartman's credibility for having left details out of the written statement. [The facts related to these

omissions are addressed infra at pages 24-26]. Counsel Conard was ineffective when he advised Hartman to produce the written statement, sign it in the presence of law enforcement, provide it to the police and arranged for Hartman to submit to questioning twice.

Doc. #5-1, Ex. 12, PageID##243-44.  The Second District Court of Appeals

examined this subclaim on direct appeal as follows:

> [*P46] Hartman argues six different grounds for establishing that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment.  Hartman claims that his counsel was ineffective when he was directed to provide a written statement to the police, and to cooperate fully in a police interrogation.  In hindsight, Hartman is able to identify that this strategy of his defense counsel to fully cooperate with the investigation against him caused difficulty in defending inconsistent statements that may have impacted his credibility at trial.  "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, P. 37 (2d Dist.), citing *Strickland* []; *State v. Parker*, 2d Dist. Montgomery No. 19486, 2003-Ohio-4326, P 13.  Throughout the trial, it is apparent that the defense strategy was to prove that the victim consented to the sexual conduct, and that Hartman did not purposely force her to submit to the sexual conduct.  Both his written statement and the statements Hartman made to the police consistently asserted that the victim had consented to the sexual encounter.  Hartman and [Weckesser] are the only two witnesses to the sexual conduct, which would inevitably lead to a question of which witness to believe.  It was reasonable, in light of counsel's perspective at the time, to pursue a strategy not to let the victim's version of the events go unanswered in the investigative stage.  We conclude that counsel's strategy of cooperation with the police investigation, under the circumstances of this case, did not constitute ineffective assistance of counsel.

*Hartman*, 2016-Ohio-2883 at ¶ 46.

Although Petitioner largely relies on the affidavits of Petitioner's mother

and Detective Salyer, this Court, after reviewing Petitioner's claim on direct

appeal, as well as the decision of the Second District Court of Appeals, concurs with Magistrate Merz that these affidavits were not *necessary* to fully litigate this claim on direct appeal. *See* Doc. #22, PageID#2169; *see also Hartman*, 2016-Ohio-2883, ¶ 46. Petitioner's affidavits seem to question, in hindsight, the effectiveness of Petitioner's trial counsel's decision to act as he did. As the Second District noted, however, hindsight cannot form the basis of a claim for ineffective assistance of counsel. *See Hartman*, 2016-Ohio-2883 at ¶ 46 (quoting *Woullard*, 2004-Ohio-3395 at P. 37). As such, this evidence would not overcome the determination of *res judicata* during post-conviction proceedings. *Goldwire*, 2005-Ohio-5784 at ¶ 9, 11.

Since the *res judicata* determination functions as an adequate and independent state ground on which to render a decision, Petitioner's subclaim, pursuant to *Maupin*, is procedurally defaulted and precluded from review by this court. *Maupin*, 785 F.2d at 138; *accord Durr v. Mitchell*, 487 F.3d at 432.

### 2) Ineffective Counsel Due to the Concocted Statement

The remaining balance of Petitioner's claim focuses on whether trial counsel Conard was ineffective when he inserted part of a "template" into Petitioner's statement before delivering it to Officer Norris. *See* Doc. #18, PageID##2076-79. Conard added the following to Petitioner's written statement: "Molly and I were sexually irresponsible, inexperienced and immature. Although we were strangers, we were consenting adults. . . [T]he decisions made will follow

and haunt me for the rest of our lives."  This language was borrowed from another client's case.

Respondent agrees that this portion of Ground Eleven does rely on evidence *dehors* the record.  Respondent defended this ground on the merits, arguing that such evidence and any conclusion drawn therefrom are entitled to deference under the AEDPA.  *See* Doc. #6, PageID#1130, n.4; *see also Id*. at PageID##1174-79.

In his initial Report and Recommendations, Magistrate Merz concurred with the Second District, that this claim was without merit, stating:

> It is hardly malpractice for any attorney to use forms and models developed over time in assisting a new client. In this case the defense strategy of admitting the sexual conduct and expressing remorse for any bad results was a reasonable strategy. The Second District's conclusion that it was not ineffective assistance of trial counsel deserves deference under *Strickland*.

Doc. #22, PageID#2171.  Petitioner, in his Objections, largely reiterates his arguments, essentially questioning how this could be considered "reasonable trial strategy."  *See* Doc. #27, PageID##2303-05.  Magistrate Merz renewed his initial conclusion, without further analysis, in his Supplemental Report and Recommendations.  Doc. #29, PageID##2347-48.  Petitioner again asserted his contention in his Objections to the Supplemental Report and Recommendations, Doc. #34, PageID##2483-89.

In its analysis, the trial court found that Petitioner's claim was without merit, stating:

Though the incorporation of another client's statement into Mr. Hartman's statement may be questioned, Mr. Hartman signed his name to the statement indicating he concurred in the sentiment being expressed. Further, the language, though stilted, is not inconsistent with Mr. Hartman's assertion the sexual activity was consensual. This court, given the highly deferential standard used to evaluate an attorney's performance cannot conclude Mr. Conard engaged in ineffective assistance of counsel by having Mr. Hartman incorporate the language at issue into his statement.

Additionally, and importantly, Mr. Hartman has failed to demonstrate that the exclusion of the contested language would have, within a reasonable probability, changed the outcome of the case.

Doc. #5-3, Ex. 25, PageID##806-07. The Second District concurred in this opinion,

stating:

We agree with the trial court that much of what Hartman raises in his third ground for relief is barred by res judicata, because these arguments were raised or could have been raised in his direct appeal. *Goldwire* at ¶ 11. Further, there is no evidence that Hartman did not agree with his counsel's advice or that he did not knowingly waive his rights. Rather, the evidence submitted by Hartman in his petition supports a finding that Hartman and his counsel discussed writing a statement and Hartman then wrote a statement that both he and his counsel revised before it was presented to the lead detective. We agree with the trial court that the emails between Hartman and his trial counsel, which were attached to Hartman's petition for post-conviction relief, are insufficient to create a genuine issue of material fact that Hartman's counsel committed professional errors or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. R.C. 2953.21(D). Moreover, these emails are insufficient to warrant an evidentiary hearing. R.C. 2953.21(C).

*Hartman*, 2017-Ohio-7933 at ¶ 40.

Although Petitioner is correct that he, personally, did not insert the

challenged language into his statement, he did assent to its inclusion. *See, e.g.*,

Doc. #5-2, Defendant's Ex. I, PageID#587 (email from Hartman to trial counsel

Conard stating "I have attached my statement and added the suggested parts."). Further, Hartman trusted his trial counsel to modify the statement to support their theory. *Id.* ("Feel free to edit or cut anything out . . ."). Petitioner attempts to counter this assent by questioning the strategy of trial counsel in inserting the language into Petitioner's statement, but such hindsight cannot "distort the assessment of what was reasonable in light of counsel's perspective at the time." *See Woullard*, 2004-Ohio-3395 at ¶ 37.

In light of the evidence supporting Petitioner's assent to the statement, the Court concurs with Magistrate Merz that "[t]he Second District's conclusion that it was not ineffective assistance of trial counsel deserves deference under *Strickland*." Doc. #22, PageID#2171. As such, the Court ADOPTS the recommendation of Magistrate Merz to dismiss this portion of the claim as meritless.

Ground Eleven is dismissed in part as procedurally defaulted and dismissed in part on the merits.

### K. Ground Twelve: Ineffective Assistance of Trial Counsel Claim Regarding False and Misleading Information Before Obtaining Jury Waiver

In his Twelfth and final Ground for Relief, Petitioner contends that he was denied the effective assistance of counsel, in violation of the Sixth Amendment and the holding of *Strickland v. Washington*, when trial counsel failed to fully inform him as to his right to a jury trial and the effect of waiving it, and provided him with "false and legally baseless reasons" for doing so. Doc. #1, PageID##64-

65. Respondent, in its Return, defended this claim on the merits, arguing that the Second District's opinion is entitled to deference under the AEDPA. Doc. #6, PageID#1179.

The Ohio Supreme Court has held that "if the record shows that a jury waiver occurred, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made." *State v. Lawson*, 2021-Ohio-3566, 165 Ohio St. 3d 445, 460, *cert. denied*, 212 L. Ed. 2d 332, 142 S. Ct. 1379 (2022).

In *United States v. Martin*, 704 F.2d 267 (6th Cir. 1983), the Sixth Circuit addressed the issue of an intelligent waiver of the constitutional right to a jury trial:

> Moreover, a defendant ignorant of the nature of the jury trial right cannot intelligently weigh the value of the safeguard. A defendant, therefore, should have both the mental ability and some knowledge of the jury trial right before he is allowed to waive it. See *Adams*, 317 U.S. at 280; *United States ex re. McCann*, 320 U.S. at 221. A technical knowledge of the jury trial right, however, is not what is required. *See, e.g.*, *Johnson v. Wolfenbarger*, 391 Fed. Appx. 510, 516 (6th Cir. 2010). A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right. *See United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981). Knowledge of these essential attributes is generally sufficient to enable a defendant to make a knowing and intelligent decision.

*Martin*, 704 F.2d at 273.

A signed written waiver of a petitioner's right to a jury trial, in open court, is presumptively voluntary, knowing, and intelligent. *United States v. Sammons*,

918 F.2d 592, 597 (6th Cir. 1990). In this case, it is undisputed that Petitioner

executed a written jury waiver, indicating that he "fully understand[s] that under

the laws of this state, I have a constitutional right to a trial by jury." Doc. #5-1,

PageID#85. Petitioner admits that he waived his right to a jury trial "in open court

and on the record." Doc. #1, PageID#64. The transcript of that proceeding,

however, has not been made part of the record. As Magistrate Judge Merz noted

in his initial Report and Recommendations, "[i]n the absence of a transcribed

record showing that Judge Tucker did not adequately inform Hartman of the

consequences of waiving a jury, this Court presumes the regularity of those

proceedings." Doc. #22, PageID#2177 (citing *Walker v. Johnston*, 312 U.S. 275,

286 (1941)).

In its opinion affirming the dismissal of Petitioner's petition for post-

conviction relief, the Second District stated:

> [*P76] Hartman contends that the trial court erred in finding that
> counsel's advice to waive a jury trial was not objectively
> unreasonable. According to Hartman, the following evidence shows
> that there is a genuine issue of material fact as to whether the advice
> was objectively unreasonable: (1) Counsel first informed the trial
> court at a bond conference "that the family would probably be going
> with a bench trial"; (2) counsel told Hartman's family that he had a
> good relationship with the judge, which Hartman's grandfather
> interpreted as being strong enough for the judge to find reasonable
> doubt; (3) counsel informed Hartman that the trial court judge raised
> three sons when in fact he had raised three daughters; (4) counsel did
> not explain the benefits of the jury trial and that one juror could save
> the defendant; (5) on August 11, 2014, counsel stated to the family
> that he had not been provided with all the discovery and was going
> to write a letter; (6) counsel did not write the discovery letter until
> August 26, 2014, and (7) Hartman executed the jury trial waiver on
> August 20, 2014. Hartman Appellate Brief, p. 57-58.

[*P77] "Defense counsel's [advice] to a client to waive his right to a jury trial has been considered sound trial strategy in the absence of record evidence showing otherwise." *State v. Neitzel*, 2d Dist. Miami No. 98 CA 11, 1998 Ohio App. LEXIS 4958, *6 (Oct. 23, 1998). Further, Hartman "has not suggested a single reason why the outcome of the trial would probably have been otherwise had he been tried by a jury rather than before a judge." *Id. See also State v. Aaron*, 10th Dist. Franklin No. 00AP-268, 2000 Ohio App. LEXIS 5534, *4 (Nov. 30, 2000) ("Without supporting evidence, the mere claim that a jury would have believed defendant falls far short of establishing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

[*P78] We conclude that trial counsel's advice to Hartman to waive his right to a jury trial was reasonable trial strategy and does not rise to the level of ineffective assistance of counsel and Hartman has failed to put forth sufficient operative facts to establish that there is a reasonable probability that the result of the trial would have been different if it was tried to a jury rather than a judge. Therefore, the trial court properly dismissed the tenth ground for relief in Hartman's petition.

*Hartman*, 2017-Ohio-7933 at ¶ 76-78.

At issue is whether the Second District's decision was an objectively unreasonable application of *Strickland.* Petitioner, in his Traverse, argues that his waiver was not knowing and intelligent. He maintains that he had no prior experience with the criminal justice system, and that professional norms dictated that trial counsel fully inform him of the right to a jury trial and the effect of waiving it. He further argues that "prejudice directly flows from or is presumed by the forfeiting of a constitutional right on false and legally baseless grounds." Doc. #18, PageID#2082. He maintains that the Second District unreasonably applied *Strickland* to the facts of his case.

In his initial Report and Recommendations, Magistrate Merz concluded that Petitioner's claim was meritless.  Doc. #22, PageID##2171-78.  He noted that trial counsel told Petitioner that he would recommend a bench trial before only a handful of judges, and Judge Tucker was one of those.  He told Petitioner that Judge Tucker was fair and that he had a good relationship with him.  He also discussed the likelihood of intense media coverage and how this could affect a jury's verdict.

As to Petitioner's claim that counsel never informed him that, in a jury trial, he needed just one juror to side with him to avoid a conviction, Magistrate Judge Merz correctly noted that "[t]echnically, one juror can cause a mistrial which does not equate to an acquittal.  Particularly in high profile cases, which this apparently was, the prosecutor may feel pressure to retry the case."  *Id.* at PageID#2175.

Under these circumstances, Magistrate Judge Merz concluded that the Second District reasonably applied *Strickland* in holding that counsel's advice to try the case to the bench was sound trial strategy, and that Petitioner had failed to show how he was prejudiced, given that he had offered no operative facts to establish that there is a reasonable probability that the result of the trial would have been different if it were tried to a jury.

Petitioner filed Objections to the initial Report and Recommendations.  *See* Doc. #27, PageID##2305-10.  He reiterated his contention that his waiver of his right to a jury trial could not have been knowing and intelligent due to his lack of knowledge of the criminal justice system and trial counsel's misrepresentations.

Magistrate Merz, in his Supplemental Report and Recommendations, changed his position and recommended that habeas relief be granted on Ground Twelve.  He wrote:

> The one point on which the Magistrate Judge believes the Report is in error on this Ground for Relief is trial counsel's failure to investigate sufficiently the facts on which he relied in advising the jury waiver.  It is apparently conceded that Conard told Hartman that Judge Tucker had raised three sons and would therefore "understand" the situation in which Hartman found himself on December 31, 2013.  It is also apparently conceded that Judge Tucker has in fact raised three daughters instead of three sons . . . [B]ecause Conard considered it critical and persuaded his client that it was critical, he had a duty to investigate and be accurate in his advice on this point.
>
> Hartman was prejudiced by this deficient performance.  The case turned on the competing credibility of Hartman and Weckesser.  Both were young adult college students who had admittedly consumed a great deal of alcohol.  Neither was shown to have made inconsistent pretrial statements.  Under those circumstances, it is probable that at least one juror would have believed Hartman, causing a mistrial.

Doc. #29, PageID##2348-49.

Petitioner then provided additional citations to portions of the record that further supported the Magistrate Judge's position.  *See* Doc. #34, PageID##2489-91.  Respondent filed Objections to the Supplemental Report and Recommendations, requesting this Court "[to] not adopt the faulty reasoning in the Magistrate Judge's Supp. R. and R, but [] instead look to the sound conclusion of the initial R and R holding" in making its final decision.  Doc. #35, PageID#2514.  Petitioner filed his Response to Respondent's Objections, Doc. #40.  Respondent also filed its Response, stating that "a review of Petitioner's protracted Objections

reveals nothing substantially different than he had previously set forth in his Traverse and Objection to the Magistrate Judge's initial R and R." Doc. #41, PageID#2555 (citations omitted).

Having carefully reviewed the record and the applicable law, the Court SUSTAINS Respondent's Objections to the Supplemental Report and Recommendations. The Court agrees that the initial Report and Recommendations are better reasoned.

Notably, Magistrate Judge Merz changed his position based *solely* on the fact that trial counsel gave Petitioner and his family false information when he told them that Judge Tucker had raised three sons. The Magistrate Judge stated that trial counsel considered this fact to be "critical" to his advice to try the case to the bench. The record shows, however, that, in discussing the benefits of a bench trial, counsel did not volunteer any information concerning the gender of Judge Tucker's children. It was Petitioner's grandfather who questioned whether Judge Tucker had any daughters. Doc. #5-2, PageID#625. Counsel responded –albeit incorrectly-- that Judge Tucker had all sons. Notably, counsel did not include the gender of the judge's children among the initial reasons why Petitioner should consider a bench trial. Instead, this false information was given in response to the grandfather's question. Although Petitioner may have relied on it, to some extent, in waiving his right to a jury trial, it was not "critical" to *counsel's advice* to try the case to the bench, as Magistrate Judge Merz suggests.

Moreover, as the Second District held, there were numerous other reasons why the advice to waive the right to a jury trial was "sound trial strategy" in this case. Counsel told Petitioner that Judge Tucker was "fair," that he had a good relationship with him and would feel comfortable trying the case to him. He also told them that, given the extensive media coverage that similar date-rape cases had recently received, this may unduly influence the jury's verdict. Under these circumstances, the faulty information concerning the gender of the judge's children does not take counsel's advice outside the range of competence demanded of criminal defense attorneys.

In addition, given that Petitioner executed a written waiver on the record in open court, his waiver is presumptively knowing, intelligent and voluntary. Petitioner has failed to rebut that presumption. He argues that when counsel told him that, given the current media coverage of date-rape cases, it would be hard to convince twelve people to believe him, this left him with the mistaken impression that, if he asserted his right to a jury trial, he would have the burden of convincing the jury of his innocence. However, as Magistrate Judge Merz noted in the Report and Recommendations, regardless of what counsel told Petitioner, there is no evidence that *Judge Tucker* did not adequately inform Petitioner of his right to a jury trial and the consequences of waiving it prior to accepting the jury waiver. Doc. #22, PageID#2177. Absent a transcript, the regularity of those proceedings is presumed. *Walker*, 312 U.S. at 286. Petitioner has therefore failed to establish that the jury waiver was not knowing, intelligent and voluntary.

Petitioner also maintains that he did not understand that "the Judge did not receive the same discovery that we had been provided and that the only thing the Judge could consider was everything admitted at trial." Doc. #18, PageID##2089-90. This, however, falls under the category of "technical knowledge" and, as such, cannot form the basis of Petitioner's claim of an unknowing and unintelligent waiver. *See Johnson v. Wolfenbarger*, 391 Fed. Appx. 510, 516 (6th Cir. 2010).

Based on the foregoing, the Court finds that the Second District's conclusion, that "trial counsel's advice to Hartman to waive his right to a jury trial was a reasonable trial strategy that does not rise to the level of ineffective assistance of counsel," *Hartman,* 2017-Ohio-7933, ¶78, is not an objectively unreasonable application of *Strickland.*

With respect to the prejudice prong of *Strickland*, the Second District noted that Petitioner had not suggested even one reason why the outcome of the trial would have been different had he been tried by a jury. Quoting *State v. Aaron*, 10th Dist. Franklin No. 00-AP-268, 2000 WL 1753151, *4 (Nov. 30, 2000), the Second District noted that "[w]ithout supporting evidence, the mere claim that a jury would have believed defendant falls far short of establishing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."

In the initial Report and Recommendations, Magistrate Judge Merz agreed with the Second District that Petitioner had offered no proof that he would have

been acquitted by a jury. He noted that the outcome of the case turned on the credibility of Petitioner and the victim concerning the issue of consent, and that the standard for credibility determinations was the same regardless of whether the case was tried by a judge or a jury.

In his Supplemental Report and Recommendations, the Magistrate Judge, without further explanation, found instead that Petitioner was prejudiced by counsel's deficient performance in failing to provide accurate information about the gender of the judge's children. He concluded that, because the case turned on competing credibility, "it is probable that at least one juror would have believed Hartman, causing a mistrial." Doc. #29, PageID#2349. However, he makes no effort to explain why he now believes that Hartman offered sufficient proof to support his claim of prejudice.

In the Court's view, the Second District's conclusion that "Hartman failed to put forth sufficient operative facts to establish that there is a reasonable probability that the result of the trial would have been different if it was tried to a jury rather than a judge," 2017-Ohio-7933, ¶78, is not objectively unreasonable.

For these reasons, the Court DECLINES to adopt the Supplemental Report and Recommendations with respect to Ground Twelve and DENIES Petitioner's claim as meritless. Nevertheless, given that reasonable jurists could disagree, the Court will grant Petitioner a Certificate of Appealability on Ground Twelve.

**Conclusion**

In sum, the Court ADOPTS IN PART and REJECTS IN PART the position

taken by Magistrate Merz in his Supplemental Report and Recommendations,

Doc. #29.  The Court will grant a conditional writ of habeas corpus on Ground Six,

Sub-Part Two.  The State of Ohio must discharge Petitioner from custody on his

conviction and remove Petitioner's registration from the sex offender database,

unless he is retried and re-convicted within 180 days from the issuance of the writ.

The Court DISMISSES the remaining Grounds for Relief with prejudice.  The

Court, however, grants Petitioner a Certificate of Appealability on Ground Twelve.

The Court denies Certificates of Appealability on all other grounds asserted.[19]

Judgment shall be entered granting Petitioner a conditional writ of habeas

corpus on Ground Six, Sub-Issue Two.  As to all remaining claims, judgment shall

be entered in favor of Respondent and against Petitioner.

The captioned case is hereby ordered terminated upon the docket records

of the United States District Court for the Southern District of Ohio, Western

Division, at Dayton.

Date:  March 31, 2023

*Walter H Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[19]  Although Magistrate Judge Merz previously indicated that he would allow additional briefing on the question of Certificates of Appealability, Doc. #22, PageID#2178, the Court, having carefully reviewed the record, does not find that additional briefing is necessary or warranted.  The Court has discussed this with Magistrate Judge Merz, who has no objection to this procedure.